**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Laurence MILLER, Barbara Miller, Edwin Carey, Gilbert Demange, William Lancaster, Charles Marshall, Kenneth Phillips, John Zak and Mary Stanley, Defendants.**

No. 90 C 5515.

United States District Court,
N.D. Illinois, E.D.

Nov. 13, 1991.
On Motion to Reconsider Dec. 11, 1991.

On Motion to Certify Dec. 11, 1991.

Michael Joseph Higgins, William A. Spence, Freeborn & Peters, Chicago, Ill., Bridget A. Gauntlett, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for plaintiff/counter defendant.

Barbara Matusik Miller, pro se.

John B. Simon, Russ M. Strobel, Nina E. Vinik, Jenner & Block, Karla Wright, Karla Wright, Ltd., Chicago, Ill., Richard L. Lucas, Richard L. Lucas & Associates, Ltd., Addison, Ill., Walter Peter Maksym, Jr., Walter P. Maksym & Associates, Oak Brook, Ill., William H. Theis, Chicago, Ill., for defendants/counter-claimants, third-party plaintiffs and third-party defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff, Federal Deposit Insurance Corporation ("FDIC") filed this action against nine former directors and officers of Lyons Federal Trust and Savings and its subsidiary service corporations. The FDIC's complaint alleges breach of fiduciary duty (Counts I, II and III), fraud (Counts IV and V), negligence (Counts VI and VII) and breach of contract (Count VIII). Six defendants Barbara Miller, Edwin Carey, Gilbert Demange, William Lancaster, Charles Marshall and Kenneth Phillips have moved to dismiss the FDIC's claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated in this memorandum opinion and order the motions are granted in part and denied in part.

## FACTUAL BACKGROUND

In ruling on a motion for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) the court must presume all of the well-pleaded allegations of the complaint to be true. *Miree v. DeKalb County, Georgia,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). The facts, as alleged in the complaint, are summarized as follows.

Lyons Savings and Loan Association was an Illinois chartered savings and loan from 1922 until August 1986, when Lyons converted to a federal charter and was renamed Lyons Federal Trust and Savings Bank ("Lyons"). (Complaint, ¶ 22.) On September 24, 1987, the Federal Home Loan Bank Board ("FHLBB") appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver for Lyons, which by that time had become insolvent. (¶ 38.)

In the years before its insolvency, Lyons management had pursued a strategy of rapid growth. Departing from the traditional reliance on residential mortgage lending, Lyons invested heavily in real estate development and other higher risk ventures. (¶ 26–28.) The Federal Home Loan Bank Board and the Illinois Commissioner of Savings and Residential Finance, who considered Lyons' new lending and investment practices to be unsound, became concerned about the situation at Lyons as early as 1983. From 1984 until its insolvency in 1987, Lyons had been operated under a number of consent agreements and FHLBB supervisory directives restricting its activities. (¶ 29–38.)

Defendants Barbara and Laurence Miller (collectively referred to as "the Miller defendants") are the daughter and son-in-law of the founder of Lyons. They each served as officers and directors of Lyons at various times from 1963 until September 24, 1987. (¶ 13–14, 24–25.) The other named defendants (collectively referred to as "the Director defendants"), with the exception of defendant Mary Stanley, were at various times each members of the Board of Directors of Lyons during the period relevant to this lawsuit, which is the early to middle 1980's. (¶ 15–20.) Defendant Mary Stanley was "at all relevant times" director and president of two Lyons service corpora-

tions, Century Universal Enterprises and G.R. Urban Renewal Investment Corporation. (¶ 21.)

According to the complaint, more than $20 million in losses at Lyons were caused by the Lyons' officers' and directors' breaches of fiduciary duty, breaches of contract, negligence and, in certain transactions, by the Miller defendants' fraud. The complaint details a number of allegedly unsound financial transactions in which the Miller defendants caused Lyons to be engaged and to which the Director defendants either assented or failed to prevent. (¶ 39–136.)

One transaction detailed in the complaint is of particular significance to this motion. Count V of the complaint describes a transaction in which Lyons, at the direction of the Miller defendants, sold property in Lombard, Illinois to a group of developers in November 1985. This transaction resulted in a 10% commission paid to a Lyons' borrower Judy Thornber, a friend of the Miller defendants and a consultant to Lyons, totalling $165,000. A substantial part of that commission, $160,000, was paid to Lyons to cover a loss on a Thornber project in Cincinnati, Ohio called Kenwood Green. (¶ 156–63.)

## DISCUSSION

### I. DIRECTOR DEFENDANTS' MOTIONS TO DISMISS

In Counts III, VII and VIII, the FDIC alleges breach of fiduciary duty, negligence and breach of contract against defendants Carey, Demange, Lancaster, Marshall, Phillips, Zak and Stanley.[1] Director defendants Carey, Marshall, Lancaster, Demange and Phillips (collectively "moving Director defendants") have moved to dismiss these counts. Their motions rely on identical arguments and will be treated together.

The moving Director defendants contend that the FDIC has failed to state a claim under either state or federal law. According to their motions, Counts III, VII and VIII do not state claims under federal law, because these counts fail to allege gross negligence as is required by the applicable federal statute, Title 12 U.S.C. § 1821(k). As for state law, the moving Director defendants argue that the counts are barred by an Illinois doctrine prohibiting the recovery of "economic damage" in negligence actions.

### A. Federal Law Cause of Action and 12 U.S.C. § 1821(k)

The court's approach to the issues raised by the motions hinges on the interpretation given the section of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") which explicitly grants the FDIC a cause of action against the directors of insured financial institutions. 12 U.S.C. § 1821(k). The provision ("§ 1821(k)") reads as follows:

A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation which action is prosecuted wholly or directly for the benefit of the Corporation—

(1) acting as conservator or receiver of such institution,

(2) acting on a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed by such receiver or conservator, or

(3) acting on a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed in whole or in part by an insured depository institution or its affiliate in connection with assistance provided under section 1823 of this title,

for gross negligence, including any similar conduct or conduct that demon-

---

1. In making these claims, the FDIC stands in the shoes of Lyons. As receiver, the FSLIC succeeded to all rights of Lyons, including any claims it might have against its directors. These claims were sold by FSLIC as receiver, to the FSLIC in its corporate capacity. Under the Financial In-

stitutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821a, the FDIC, as manager of the FSLIC Resolution Fund, is entitled to bring suit on claims previously held by the FSLIC. (Complaint, ¶ 12.)

strates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

Defendants contend that the FDIC can only maintain a cause of action under federal law by alleging the gross negligence specified in the language of the statute. The FDIC's complaint has not explicitly alleged "gross" negligence on the part of the defendants, only negligence.

In response, the FDIC points to the last sentence of the section, which provides: "Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law." The FDIC argues that this "savings clause" preserves its right to sue for breach of fiduciary duty and simple negligence under "federal common law" which existed prior to the passage of the statute.

In support of its position, the FDIC cites several cases in which federal district courts recognized federal claims against directors of financial institutions for breaches of fiduciary duty. *See e.g., Rettig v. Arlington Heights Federal Savings and Loan Assoc.*, 405 F.Supp. 819 (N.D.Ill. 1975); *City Federal Savings and Loan v. Crowley*, 393 F.Supp. 644 (E.D.Wis.1975); *Federal Savings and Loan Ins. Corp. v. Kidwell*, 716 F.Supp. 1315 (N.D.Cal.1989). The FDIC argues that these cases demonstrate the existence of cognizable claims constituting "other applicable law" within the meaning of the § 1821(k) savings clause. Therefore, according to the FDIC, the claims of breach of fiduciary duty based on simple negligence are still available to be asserted under "federal common law" regardless of § 1821(k)'s directive that the FDIC's federal cause of action be based on gross negligence.

In determining whether to recognize the "federal common law" cause of action for simple negligence urged by the FDIC, the court finds guidance in the principles articulated by the Supreme Court in *City of*

*Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981), which dealt with the question of whether the Federal Water Pollution Control Act Amendments of 1972 displaced the federal common law of nuisance. In *City of Milwaukee* the Supreme Court stated that federal common law causes of action can be "resorted to in the absence of an applicable act of Congress," but "when Congress addresses a question previously governed by a decision resting on common law the need for such an unusual exercise of lawmaking by Federal courts disappears." *Id.* at 314–315, 101 S.Ct. at 1791. A key inquiry in determining whether a Congressional act supplants a previous federal common law right is whether "the legislative scheme spoke directly to the question." *Id.* at 315, 101 S.Ct. at 1791.

The courts in the cases cited by the FDIC addressed the issue of the existence of a right of action under the law as it existed before passage of the FIRREA in 1989. Because these decisions were rendered before § 1821(k) became law, they were issued in the absence of express Congressional direction as to the scope of federal claims based on a federally insured financial institution's director's breach of fiduciary duty. By passing § 1821(k), however, Congress "spoke directly" to the issue with which those cases dealt. Congress has now expressly defined the magnitude of negligence which would give rise to a federal cause of action against officers and directors of federally insured financial institutions. This legislation has eliminated the need for the judicial lawmaking exhibited by the cases relied upon by the FDIC.

■ In reaching this conclusion, this court applies the principle that a statute should be interpreted in a way that gives effect to all of its provisions. *See Mountain States Telephone and Telegraph Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985). If § 1821(k) were construed in the way urged by the FDIC, with the federal common law simple negligence causes of action preserved, the main body of the provision requiring "gross negligence" would have

no effect. Consequently, the federal gross negligence standard § 1821(k) establishes would be purposeless, since a federal negligence standard would already exist and be preserved by the savings clause.

▆▆▆ In light of these considerations, the explicit definition of the standard of actionable conduct—"gross negligence"— in § 1821(k) must take precedence over previous judicial determinations articulating "federal common law" claims based on allegations of conduct less egregious than gross negligence. The court must require that the gross negligence standard established by the statute, rather than the previous "federal common law," cited by the FDIC, be met as to any federal claim for breach of the fiduciary duty of care against the officers or directors of FDIC insured financial institutions. Consequently, the court must conclude that the FDIC's complaint does not state a claim under federal law. At no point in the complaint does the FDIC allege the defendants' conduct constituted "gross negligence" as required by § 1821(k).[2]

### B. State Law Causes of Action and the Moorman Doctrine

▆▆▆ Determining that the complaint will not support a federal cause of action does not, however, end the court's inquiry. As previously discussed, the savings clause of 1821(k) preserves for the FDIC "any right of the corporation under other applicable law." Although, as discussed, this clause does not provide for federal common law claims not premised at the least upon defendants' gross negligence, it is clear to the court that the broad language of the savings clause was intended to preserve

state law rights. This understanding essentially accords with the interpretation given § 1821(k) by other district courts. *FDIC v. McSweeney*, 772 F.Supp. 1154 (S.D.Cal.1991); *FDIC v. Fay*, 779 F.Supp. 66 (S.D.Tex.1991).[3]

▆▆▆ The court therefore must determine whether counts III, VII, or VIII allege causes of action cognizable under Illinois law. The laws of the state of incorporation generally govern the fiduciary duties of corporate directors. *Treco, Inc. v. Land of Lincoln Savings*, 749 F.2d 374, 377 (7th Cir.1984). The moving Director defendants had their respective positions for varying periods of time, but all served prior to 1986, while Lyons was still an Illinois chartered savings and loan. Therefore Illinois fiduciary duties of care applied to their actions at least during that time period. As the FDIC has acquired the rights of Lyons against its directors, it may, under the savings clause of § 1821(k), pursue any available remedy for breach of fiduciary duty or negligence provided by Illinois law.

▆▆▆ The defendants contest the availability of an Illinois cause of action for breach of fiduciary duty and negligence on the basis of a legal doctrine first articulated by the Illinois Supreme Court in *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). In *Moorman*, the Illinois Supreme Court held that a purchaser of a defective tank could not recover in negligence for "economic damage," as opposed to "property damage" or "personal injury," resulting from the failure of the tank. The Illinois Supreme Court reasoned that the plaintiff should more appropriately seek his remedy

---

2. The parties have not argued and the court states no opinion on the issue of whether the specific facts alleged would support a claim of gross negligence. If the FDIC believes consistent with Fed.R.Civ.P. 11 that its factual allegations would support a claim under § 1821(k) for gross negligence or "a greater disregard of a duty of care (than gross negligence)", it is given leave to amend its complaint to so plead. FDIC must do so no later than forty-five days from the date of this opinion. As currently pleaded, however, the complaint does not conform to the requirements of § 1821(k) and therefore cannot be supported by reference to federal law.

3. In contrast to the interpretation given § 1821 in *McSweeney* and *Fay*, one court has ruled that the provision creates a uniform national standard which preempts all other causes of action, state and federal, and that the savings clause refers only to remedies established by the FIRREA itself. *FDIC v. Canfield*, 763 F.Supp. 533 (D.Utah 1991). The court considers it more probable that the phrase "other applicable law" refers to law outside the FIRREA, and therefore declines to follow the *Canfield* holding.

in contract. *Id.,* 91 Ill.2d at 86, 61 Ill.Dec. at 753, 435 N.E.2d at 450. Defendants, characterizing the losses resulting from the loans in question at Lyons as economic damage within the meaning of *Moorman,* argue that the doctrine of *Moorman* is applicable to the FDIC's claims against them.

The Illinois Supreme Court recently clarified the scope and purpose of the *Moorman* doctrine in *2314 Lincoln Park West Condominium Assoc. v. Mann,* 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346 (1990). In *2314 Lincoln Park West,* the Illinois Supreme Court held that *Moorman* barred an action for negligence against an architect who had designed a flawed building, premising the result on the fact the architect's duty to the owners of the building rested in the original contract and therefore should be pursued under a contract theory. *Id.,* 136 Ill.2d at 316–17, 144 Ill. Dec. at 233–34, 555 N.E.2d at 352–53.

The Illinois Supreme Court in *2314 Lincoln Park West* applying the *Moorman* principle expressly distinguished the architect situation from other professional relationships in which "extracontractual" duties were placed upon the defendants. *Id.,* 136 Ill.2d at 314–18, 144 Ill.Dec. at 232–34, 555 N.E.2d at 351–53. The Illinois Supreme Court pointed to the attorney-client relationship as the context in which the existence of extra-contractual duties would preclude the application of *Moorman. Id.,* 136 Ill.2d at 317–18, 144 Ill.Dec. at 234, 555 N.E.2d at 353.

The explanation offered in *2314 Lincoln Park West* makes it clear that *Moorman* does not stand simply for the proposition that "economic losses are not recoverable in tort." (Carey and Marshall Reply Memorandum of February 1, 1991 at 10.) Rather, the doctrine is meant to insure that claims which are grounded solely in the breach of contractual duties should be pursued in contract, rather than tort. Defendants Carey and Marshall acknowledge this aspect of the *Moorman* doctrine, stating in

their brief that "exceptions to *Moorman* arise where the defendant breaches a duty not provided for in the underlying contract." (Defendants' Reply Memorandum at 11.)

In this case, the relationship and duty upon which the FDIC's action relies is one not completely provided for in any underlying contractual relationship. Like the attorney malpractice action excluded from *Moorman,* the FDIC's action is based on the breach of fiduciary, not contractual, duties. Although fiduciary duties may coexist with contractual duties, the two are distinct and impose separate, independent obligations. *See Spartech Corp. v. Opper,* 890 F.2d 949, 951–52 (7th Cir.1989) (distinguishing contractual and fiduciary duties).

Defendants owed their duty of care to Lyons not solely as a result of any agreement into which they have entered, but rather by virtue of the position they held with Lyons. The *Moorman* doctrine, as explained by the Illinois Supreme Court, is therefore inapplicable. As the *Moorman* doctrine is the only objection which the moving Director defendants have raised to the complaint under state law, the counts against them will stand.[4]

## II. MOTION TO DISMISS FILED BY BARBARA MILLER

In Counts I, II, and VI, the FDIC alleges breach of fiduciary duty and negligence against the Miller defendants. Barbara Miller has moved to dismiss these counts. She has premised her motion first on arguments which mirror those raised by the other moving defendants. These contentions are, for the same reasons, rejected.

Defendant Miller next argues that the Illinois Business Judgment rule shields her from liability. In Illinois, a director will not be liable for good faith errors in business judgment. *Fields v. Sax,* 123 Ill.App.3d 460, 464, 78 Ill.Dec. 864, 867, 462 N.E.2d 983, 986 (1st Dist.1984).

---

4. This includes the breach of contract claim of count VIII, as defendants have forwarded no reason why this count should be dismissed under state law. As previously discussed, contrac-

tual duties may coexist with fiduciary duties, therefore the FDIC may pursue a breach of contract theory as well as a breach of fiduciary duty theory.

To come within the ambit of the rule, however, a director must be diligent and careful in performing the duties they have undertaken. *Lower v. Lanark Mut. Fire Ins. Co.*, 114 Ill.App.3d 462, 467, 70 Ill.Dec. 62, 67, 448 N.E.2d 940, 945 (2d Dist.1983).

The thrust of the FDIC's claims against defendant Barbara Miller is that she did not perform her duties with care and diligence and therefore is not entitled to the protection of the business judgment rule. For purposes of a motion to dismiss, the complaint's version of the facts must be taken as true. Although the business judgment rule may well become an issue at a later stage of this case, dismissal on this ground is not now appropriate.[5]

Additionally, defendant Barbara Miller challenges the FDIC's fraud count V, as not being pleaded with the specificity required by Fed.R.Civ.P. 9(b). Federal Rule 9(b) provides that "the circumstances constituting fraud ... shall be stated with particularity." Count V of the complaint details a transaction in which Lyons in November 1985, at the direction of the Miller defendants, sold property located in Lombard, Illinois to a group of developers. This sale resulted in a $165,000 commission being paid to Judy Thornber, a borrower from Lyons and allegedly a friend of the Miller defendants as well as a consultant to Lyons. A substantial part of Ms. Thornber's $165,000 commission was used to cover losses on a Thornber project in Cincinnati. (¶ 156–59.) The complaint has characterized the $165,000 as a "false commission" and claims that "Lyons reasonably relied upon the misrepresentations of Lawrence Miller and Barbara Miller about the commission to its detriment." (¶ 160–162.)

Under Rule 9(b), a complaint alleging fraud must state "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990). A fraud allegation that does not identify the statements in question or specify why they were fraudulent does not fulfill the requirements of Rule 9(b). *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 819 (7th Cir.1987).

The FDIC's complaint states that the commission paid Thornber was "false," and that Lyons "reasonably relied" on the misrepresentations the Miller defendants made about it. (¶ 161–162.) However, the complaint has not specified why the commission was false and has not described when, where and what misrepresentations were made to Lyons about the commission. The complaint answers the "when" question only by referring to the time of the sale of the property. This vagueness makes it difficult to determine whether a statute of limitations defense would be viable. As a result of these shortcomings, Count V does not fulfill the requirements of Rule 9(b) and must in this form be dismissed. The FDIC may, if it desires, replead this count in conformity with the particularity requirements of Rule 9(b) within forty-five days of this order.

## CONCLUSION

For the foregoing reasons, the moving defendants' motions to dismiss plaintiff's federal common law claims which fail to comport with 12 U.S.C. § 1821(k) and defendant Barbara Miller's motion to dismiss Count V are GRANTED. FDIC is given leave to file an amended complaint within forty-five days of the date of this opinion. Defendants' other motions to dismiss are DENIED. Parties are urged to discuss settlement of this case. This case is set for status on January 16, 1992 at 10 a.m.

## ON MOTION TO RECONSIDER

On November 13, 1991, the court ruled on various 12(b)(6) motions in this case, holding, *inter alia*, that Illinois law did not bar plaintiff Federal Deposit Insurance

---

5. Arguments raised by defendant Barbara Miller regarding proximate causation likewise concern factual disputes not ripe for resolution in a motion to dismiss. Defendant Miller also argues that the FDIC has not complied with Fed.R.Civ.P. 10(b) by combining state and federal claims in a single count. This argument is rejected, as plaintiffs may plead counts which rely on different theories of recovery, if the theories are based on the same facts. *See* Wright and Miller, *Federal Practice and Procedure*, Civil 2d, § 1324.

Corporation's ("FDIC's") state law tort claims for negligence and breach of fiduciary duty against defendants Edwin Carey, Charles Marshall, Kenneth Phillips, Gilbert Demange and William Lancaster. Defendants Carey, Marshall, Lancaster and Demange have moved the court to reconsider that aspect of its ruling, in light of a recent Illinois Supreme Court decision, *Collins v. Reynard*, No. 70325, 1991 WL 220561, 1991 Ill. LEXIS 104 (October 31, 1991).

The November 13 ruling rested on this court's interpretation of the Illinois tort law economic loss doctrine articulated in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). In the November 13 ruling, the court explained that application of the doctrine hinged on whether the duties underlying the relationship sued upon were contractual or extra-contractual. (See 11/13/91 Memorandum Opinion and Order at pp. 10–12.) The court held that the duties owed by the defendant directors to the Lyons Savings and Loan were fiduciary in nature, and were therefore extracontractual. Consequently, tort claims implicating those duties were not barred. In the course of its analysis, the court noted that the Illinois Supreme Court, in *2314 Lincoln Park West Condominium Assoc. v. Mann*, 136 Ill.2d 302, 317–18, 144 Ill.Dec. 227, 234, 555 N.E.2d 346, 353 (1990), had used language indicating that attorney malpractice actions, being rooted in extracontractual duties, would fall outside the scope of the *Moorman* doctrine. (See 11/13/91 Memorandum Opinion and Order at p. 11.)

The Illinois Supreme Court's recent *Collins* decision squarely holds that attorney malpractice actions are within the scope of *Moorman*. This decision, however, does not compel a reconsideration of this court's ruling of November 13, 1991. In reaching its conclusion that *Moorman* barred the plaintiff's tort action for attorney malpractice, the Illinois Supreme Court employed the same mode of analysis applied by this court, i.e., it determined whether the underlying duties being sued upon were contractual or extracontractual. (See Slip Opinion at p. 6.) The Illinois Supreme Court concluded that the duties involved in the *Collins* attorney-client dispute, unlike those in the attorney malpractice cases previously referred to in the *2314 Lincoln Park West* opinion, were solely contractual and ruled that the malpractice tort action was barred by *Moorman*. (See *Collins*, slip op. at pp. 5–6.)

The Illinois Supreme Court stated that "a different result may be reached where extracontractual, fiduciary or ethical duties are at issue," and expressly reserved judgment on that question. (See *Collins* slip op. at p. 7.) Thus, the *Collins* decision does not impact the crucial aspect of the November 13 ruling, that *Moorman* does not bar tort claims involving fiduciary duties. Neither the *Collins* decision nor any of the briefs submitted in this case persuade this court that the defendant directors did not owe a fiduciary duty of care to the Lyons Savings and Loan or that the claims against them do not implicate that duty. Consequently, the *Moorman* doctrine does not bar the claims.

For the foregoing reasons, defendants' motion to reconsider is DENIED.

## ON MOTION TO CERTIFY

 Defendants Edwin Carey, Charles Marshall, Gilbert Demange and William Lancaster have moved the court to certify for immediate interlocutory appeal under 28 U.S.C. § 1292(b) the issue, addressed in this court's ruling of November 13, 1991, of whether 12 U.S.C. § 1821(k) ("§ 1821(k)") bars the FDIC's state-law claims for negligence and breach of fiduciary duty.

Under 28 U.S.C. § 1292(b), a district court may certify an issue for immediate interlocutory appeal only if it "involves a controlling question of law as to which there is substantial ground for difference of opinion" and if an immediate appeal "may materially advance the ultimate termination of the litigation." Application of this standard leads the court to conclude that the proposed question is inappropriate for certification, because the taking of an interlocutory appeal will not materially ad-

vance the ultimate termination of this litigation.

Reversal of this court's ruling on appeal would not end the litigation, even as to the moving defendants. A decision by the Court of Appeals that § 1821(k) barred the state law breach of fiduciary duty and negligence counts against the defendants would not affect the viability of the state law breach of contract claims asserted by the plaintiff. Further, there is the possibility that plaintiff Federal Deposit Insurance Corporation will be able to amend its complaint to conform to the requirements of § 1821(k), in which case litigation of federal gross negligence and breach of fiduciary duty claims would continue even if the federal statutory provision were held to preclude state law claims on those theories. Additionally, the issue of § 1821(k)'s impact on state law remedies does not affect all of the defendants. At the very least, the fraud claims against Laurence Miller would still be viable even after a reversal by the Court of Appeals.

If this court's November 13 ruling were affirmed on interlocutory appeal, the litigation would have been delayed without substantial benefit except for the announcement of the Seventh Circuit's agreement with this court's determination. The court is, of course, confident in the correctness of its ruling and firmly believes that this scenario is the most likely outcome. In light of all these considerations, the court concludes that certification, which is a departure from the usual policy against piecemeal appeals, is not justified by the circumstances presented.

For the foregoing reasons, defendants' motion for certification for interlocutory appeal is DENIED.