**RESOLUTION TRUST CORPORATION,**
Plaintiff,

v.

**Ellen P. CAMHI, Anthony W. Caporizzo, William F. Malloy, Jr., Michael G. Morgan, Michael Nadel, William J. Selsberg, and Chester P. Soling, Defendants.**

Civ. No. 3:93CV01257 (TFGD).

United States District Court,
D. Connecticut.

Aug. 26, 1994.

Benjamin A. Solnit, David W. Schneider, Patricia E. Reilly, Tyler, Cooper & Alcorn, New Haven, CT, for plaintiff.

J. Daniel Sagarin, Margaret E. Haering, David A. Slossberg, Hurwitz & Sagarin, Milford, CT, for deft. Camhi.

Donna M. Lattarulo, Bruce L. Lev, Lev, Spalter & Berlin, Norwalk, CT, for deft. Caporizzo.

Philip D. Russell, Roy S. Ward, Russell & Ward, Greenwich, CT, for deft. Malloy.

John L. Altieri, Jr., Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, for deft. Morgan.

Elliot R. Warren, Westport, CT, for deft. Nadel.

Garie J. Mulcahey, Bai, Pollock & Dunnigan, Bridgeport, CT, for deft. Selsberg.

Carl M. Porto, Louis M. Federici, Jr., James J. Givlietti, Parrett, Porto, Parese, Colwell & Givlietti P.C., New Haven, CT, for deft. Soling.

### RULING ON OBJECTIONS TO RECOMMENDED RULING

DALY, District Judge.

Following the failure of Charter Federal Savings and Loan Association ("Charter Federal"), the Resolution Trust Corporation ("RTC") brought this action against its seven former directors.[1] The defendants moved to dismiss Counts One and Three of the complaint on the ground that the claims they assert are preempted by section 212(k) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(k). Upon referral Magistrate Judge F. Owen Eagan recommended that the motions be denied, and the defendants filed timely objections. After *de novo* review, and for the reasons stated below, the defendants' objections are sustained and the motions to dismiss are granted.

## BACKGROUND

■ True to its name, Charter Federal was a federally chartered savings and loan association which was established on April 19, 1984 and which began operations in Stamford, Connecticut on May 11, 1984. Charter Federal was regulated by the Federal Home Loan Bank Board ("FHLBB"), which required the defendants, as the bank's directors,[2] to sign a supervisory agreement with the FHLBB on behalf of the institution effective February 16, 1988. The RTC alleges that, despite the FHLBB's warnings and instructions, the defendants authorized unsafe and illegal loans that ultimately led to Charter Federal's collapse on June 30, 1990 with losses of over $5.7 million. The RTC then filed the instant action as receiver of the bank on June 25, 1993, alleging that the defendants' conduct constituted negligence (Count One), gross negligence (Count Two), and a breach of fiduciary duty (Count Three). The defendants have each moved to dismiss Counts One and Three, and Magistrate Judge F. Owen Eagan has recommended that the motions be denied. *See Resolution Trust Corp. v. Camhi*, 1994 U.S. Dist. LEXIS 8679 (D.Conn. April 6, 1994). Upon the defendants' objections, and pursuant to Federal Rule of Civil Procedure 72, the Court reviews the defendants' motions *de novo*.

## DISCUSSION

Section 212(k) of FIRREA, codified at 12 U.S.C. § 1821(k), provides:

A director or officer of an insured depository institution *may* be held personally liable for monetary damages in any civil

---

1. In light of defendant William J. Selsberg's Notice of Bankruptcy, the action as to him was ordered stayed on January 20, 1994.

2. Defendant William F. Malloy also was an officer of Charter Federal.

action by, on behalf of, or at the request or direction of the Corporation—

(1) acting as conservator or receiver of such institution,

. . . .

for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. *Nothing in this paragraph shall impair or affect any right of the [RTC] under other applicable law.*

12 U.S.C. § 1821(k) (emphasis added).

The defendants argue that Counts One and Three of the complaint should be dismissed because section 1821(k) establishes gross negligence as the exclusive standard of director liability, preempting causes of action predicated on a lesser degree of fault. The defendants further assert that federal law provides the exclusive remedy in an action against former directors of a federally chartered financial institution. The RTC argues in response that both state and federal law apply, and it urges the Court to interpret section 1821(k) to preempt only those state laws that set the standard for director liability at a level higher than gross negligence.

While the interpretation of section 1821(k) is a matter of first impression in this Circuit, various federal courts have found that section 1821(k) preempts state law,[3] preempts federal common law,[4] or preempts neither.[5] Further, several courts have held that, regard-less of the preemptive force of section 1821(k), state law claims cannot be brought against federally chartered financial institutions.[6] Magistrate Judge Eagan resolved these issues in favor of the RTC, holding that both state and federal law should apply in this action and interpreting section 1821(k) to permit the RTC to bring claims that require less than gross negligence where applicable state law would permit such claims. *See Resolution Trust Corp. v. Camhi*, 1994 U.S. Dist. LEXIS 8679, *11–13. After careful review of the statute and its legislative history, and in light of several persuasive decisions that were unavailable to the Magistrate Judge, the Court overrules both these findings.

## I. Applicability of State Law

Counts One and Three of the complaint can be construed to allege claims under either state or federal common law, requiring the Court to determine which law to apply. The defendants argue that, as Charter Federal was a creature of federal law, only federal law should apply, and they further argue that section 1821(k) establishes the sole standard of director liability under federal law. *See, e.g.,* Deft. Camhi's Mem. at 1, 16. The RTC suggests that the Court may apply Connecticut law to this action. *See* RTC's Mem. at 6–8, 28. The Court finds the defendants' argument persuasive, particularly in light of the Seventh Circuit's recent decision in *Resolution Trust Corp. v. Chapman*, 29 F.3d 1120 (7th Cir.1994).

---

3. *See, e.g., Gaff v. Federal Deposit Ins. Corp.*, 919 F.2d 384, 391 (6th Cir.1990) (dicta), *modified on other grounds*, 933 F.2d 400 (6th Cir.1991); *Resolution Trust Corp. v. O'Bear, Overholser, Smith & Huffer*, 840 F.Supp. 1270 (N.D.Ind.1993); *Federal Deposit Ins. Corp. v. Swager*, 773 F.Supp. 1244 (D.Minn.1991).

4. *See, e.g., Resolution Trust Corp. v. Miramon*, 22 F.3d 1357 (5th Cir.1994); *Resolution Trust Corp. v. Gallagher*, 10 F.3d 416 (7th Cir.1993); *Federal Deposit Ins. Corp. v. Harrington*, 844 F.Supp. 300 (N.D.Tex.1994); *Federal Deposit Ins. Corp. v. Bates*, 838 F.Supp. 1216 (N.D.Ohio 1993); *Federal Deposit Ins. Corp. v. Mintz*, 816 F.Supp. 1541 (S.D.Fla.1993); *Federal Deposit Ins. Corp. v. Miller*, 781 F.Supp. 1271 (N.D.Ill.1991); *Federal Deposit Ins. Corp. v. Isham*, 777 F.Supp. 828 (D.Colo.1991).

5. *See, e.g., Federal Deposit Ins. Corp. v. McSweeney*, 976 F.2d 532 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993); *Federal Deposit Ins. Corp. v. Canfield*, 967 F.2d 443 (10th Cir.1992) (en banc), *cert. dismissed*, —— U.S. ——, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992); *Resolution Trust Corp. v. Gibson*, 829 F.Supp. 1103 (W.D.Mo.1993); *Resolution Trust Corp. v. Hess*, 820 F.Supp. 1359 (D.Utah 1993); *Federal Deposit Ins. Corp. v. Black*, 777 F.Supp. 919 (W.D.Okla.1991).

6. *Resolution Trust Corp. v. Chapman*, 29 F.3d 1120 (7th Cir.1994); *Resolution Trust Corp. v. Farmer*, 823 F.Supp. 302 (E.D.Pa.1993); *Resolution Trust Corp. v. Hess*, 820 F.Supp. 1359 (D.Utah 1993).

■ The RTC invokes federal jurisdiction in this action pursuant to 12 U.S.C. § 1441a(*l*)(1), which states that suits to which the RTC is a party "shall be deemed to arise under the laws of the United States." The Court therefore applies federal choice-of-law principles. *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). In *Chapman* the Seventh Circuit addressed the question of which law to apply in a suit pursuant to section 1821(k). *See Chapman*, 29 F.3d at 1124. On directly analogous facts the *Chapman* Court applied the "internal affairs" doctrine to hold that federal courts should apply federal law to suits by the RTC against former directors of federally-chartered financial institutions. *Id.* at 1124.

■ The internal affairs doctrine developed on the principle that, in order to prevent corporations from being faced with conflicting demands, the authority to regulate a corporation's internal affairs should not rest with several jurisdictions. *See Edgar v. Mite Corp.*, 457 U.S. 624, 645, 102 S.Ct. 2629, 2642, 73 L.Ed.2d 269 (1982). Rather, the law of the state of incorporation determines issues relating to a corporation's internal affairs, providing certainty and predictability while generally protecting the justified expectations of parties with interests in the corporation. *See CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 89–93, 107 S.Ct. 1637, 1649–1652, 95 L.Ed.2d 67 (1987); *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621–22, 103 S.Ct. 2591, 2597–98, 77 L.Ed.2d 46 (1983). The doctrine does not apply where the rights of third parties external to the corporation are at issue, but instead applies to the relationships among or between the corporation and its directors, officers and shareholders. *See*

*Banco Para El Comercio*, 462 U.S. at 622, 103 S.Ct. at 2597; *Rogers v. Guaranty Trust Co.*, 288 U.S. 123, 130–31, 53 S.Ct. 295, 297–98, 77 L.Ed. 652 (1933); *Sadler v. NCR Corp.*, 928 F.2d 48, 54–55 (2d Cir.1991); *CRTF Corp. v. Federated Dept. Stores, Inc.*, 683 F.Supp. 422, 427 (S.D.N.Y.1988).

■ The internal affairs doctrine determines the law to apply to this action. Charter Federal was chartered, organized, regulated and insured under federal law, and subsequently also was placed into receivership pursuant to federal law. In essence, Charter Federal "was a creature of federal law 'from its cradle to its corporate grave.'" *Resolution Trust Corp. v. Gallagher*, 800 F.Supp. 595, 603 (N.D.Ill.1992) (quoting *Rettig v. Arlington Heights Federal Savings & Loan Assoc.*, 405 F.Supp. 819, 823 (N.D.Ill. 1975)), *aff'd*, 10 F.3d 416 (7th Cir.1993). As the receiver for Charter Federal, RTC inherits the corporation's claims, acquiring no more rights against its directors than were possessed by the bank itself. *Coit Independence Joint Venture v. Federal Sav. and Loan Ins. Corp.*, 489 U.S. 561, 585, 109 S.Ct. 1361, 1374, 103 L.Ed.2d 602 (1989).[7] Federal courts do not apply federal law in order to maximize the federal return following bank failures, however, *see O'Melveny & Myers v. Federal Deposit Ins. Corp.*, —— U.S. ——, ——, 114 S.Ct. 2048, 2055, 129 L.Ed.2d 67 (June 13, 1994), and courts must "consider the extent to which application of a federal rule would disrupt commercial relationships predicated on state law." *Kimbell Foods*, 440 U.S. at 729, 99 S.Ct. at 1459 (footnote omitted). The RTC's claims derive solely from the rights of Charter Federal against its former directors, and no rights of third parties are alleged to be at issue. The inter-

7. To the extent the RTC also can be said to be acting on behalf of the federal government, its claims likewise arise under federal law. *See Kimbell Foods*, 440 U.S. at 718, 99 S.Ct. at 1453. ("This Court has consistently held that federal law governs questions invoking the rights of the United States arising under nationwide federal programs."); *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366, 63 S.Ct. 573, 574, 87 L.Ed. 838 (1943) ("When the United States dispenses its funds or pays its debts, it is exercising a constitutional function or power.... The authority [to do so] had its origin in the Constitu-

tion and the statutes of the United States and was in no way dependent on the laws [of any State].") (citation omitted); *Westnau Land Corp. v. United States Small Bus. Admin.*, 1 F.3d 112, 117 (2d Cir.1993). Congress intended FIRREA to establish a national statutory program governing the savings and loan industry, and the receivership powers of the RTC are an integral part of this scheme. *See Gaff*, 919 F.2d at 391 (stating that the legislative history of FIRREA "explicitly states an intent to nationalize the law of directors' and officers' liability when banks are taken over by the FDIC.").

nal affairs doctrine therefore governs this action and directs the application of federal and not state law. *See Banco Para El Comercio,* 462 U.S. at 622, 103 S.Ct. at 2597; *Sadler,* 928 F.2d at 54–55; *see also Chapman,* 29 F.3d at 1124.[8]

## II. Preemption of Federal Common Law

The defendants next argue that, as the plain language of section 1821(k) does not provide for lesser degrees of fault such as simple negligence or breach of fiduciary duty, the section preempts any federal common law claims based on these standards. *See* Deft. Camhi's Mem. at 6. The RTC contends that section 1821(k) imposes a liability threshold of gross negligence, thereby preempting only those causes of action that require a greater degree of fault but permitting reliance upon lesser standards of liability.

■ In determining the effect of section 1821(k) upon previously existing federal common law, the analysis begins "with the assumption that it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law." *City of Milwaukee v. Illinois,* 451 U.S. 304, 317, 101 S.Ct. 1784, 1792, 68 L.Ed.2d 114 (1981). Federal common law develops when the absence of an applicable act of Congress, and a conflict between national policy and state law, necessitate courts creating a federal rule. *See id.* at 313, 101 S.Ct. at 1790. Federal common law therefore can at times be necessary, but "when Congress addresses a question previously governed by a decision rested on federal common law, the need for such an unusual exercise of lawmaking by federal courts disappears." *Id.* at 314, 101 S.Ct. at 1791 (citations omitted); *see also*

*United States v. Texas,* —— U.S. ——, ——, 113 S.Ct. 1631, 1634, 123 L.Ed.2d 245 (1993).

■ The Court thus must determine whether Congress, in enacting section 1821(k), specifically intended to address completely the issue of director liability. The starting point for this question of interpretation is the language of the statute itself, and " '[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.' " *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Section 1821(k) provides that "[a] director or officer . . . may be held personally liable for monetary damages in any civil action . . . for gross negligence." 12 U.S.C. § 1821(k). As the Fifth Circuit recently noted, "[i]t is difficult to conceive how Congress could more clearly 'speak directly' to the issue of the standard of care for personal liability of directors and officers of federally-insured depository institutions." *Resolution Trust Corp. v. Miramon,* 22 F.3d 1357, 1361 (5th Cir.1994); *see also Gallagher,* 10 F.3d at 420 ("The plain language of § 1821(k) 'speaks directly' to the issue presented in this case and establishes a gross negligence standard of liability. . . ."). As Congress has spoken to the issue the need to resort to federal common law no longer exists, and thus section 1821(k) preempts federal common law. *See City of Milwaukee,* 451 U.S. at 314, 101 S.Ct. at 1791; *Miramon,* 22 F.3d at 1361.[9]

■ The RTC argues, however, that the term "may" in the first sentence and the "savings clause" set forth in the final sen-

---

8. The result would be the same if the Court applied the choice of law principles of Connecticut as the forum state. *See Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Norlin Corp. v. Rooney, Pace Inc.,* 744 F.2d 255 (2d Cir.1984). Connecticut courts also apply the internal affairs doctrine to disputes among or between a corporation and its directors or officers, when the claims concern liability of directors or officers for injuries arising out of their stewardship. *See Ellis v. Emhart Mfg. Co.,* 150 Conn. 501, 508, 191 A.2d 546 (1963); *White v.*

*Greene,* 96 Conn. 265, 272, 114 A. 112 (1921); *Lowe v. R.P.K. Pressed Metal Co.,* 91 Conn. 91, 95, 99 A. 1 (1916); *see generally* Conn.Gen.Stat. § 33–401.

9. This conclusion does not conflict with the decisions of the Ninth Circuit in *McSweeney,* 976 F.2d at 538, and the Tenth Circuit in *Canfield,* 967 F.2d at 445, as neither court addressed the question of whether section 1821(k) preempts federal common law.

tence should be read to permit claims based on a standard of care lower than gross negligence. *See* RTC's Mem. at 20. Specifically, the RTC asserts that the term "may" prevents section 1821(k) from being interpreted to create an exclusive remedy limiting the RTC to claims alleging gross negligence or greater culpability. Read in the context of the entire provision, however, the term "may" simply refers to the RTC's general right to bring an action under the section. As the Seventh Circuit noted in *Gallagher*, " '[m]ay' cannot reasonably be read to qualify the gross negligence standard and is therefore irrelevant to the substance of the provision.' " 10 F.3d at 419 (quoting *Canfield*, 967 F.2d at 450 n. 4 (Brorby, J., dissenting)).

█ The RTC also argues that the savings clause preserves federal common law on the ground that, absent a clear congressional statement to the contrary, preexisting statutory or common law rights are not displaced by federal enactment. *See* RTC's Mem. at 26 (citing *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 236–37, 105 S.Ct. 1245, 1252–53, 84 L.Ed.2d 169 (1985)); *see also Norfolk Redev. & Hous. Auth. v. Chesapeake & Potomac Tel. Co.*, 464 U.S. 30, 35, 104 S.Ct. 304, 307, 78 L.Ed.2d 29 (1983). By enacting section 1821(k), however, Congress expressly defined the magnitude of negligence which would give rise to a federal cause of action against directors of a federally insured financial institution, thereby removing the need for courts to construct law regarding a federal standard of liability in this area. *See City of Milwaukee*, 451 U.S. at 316, 101 S.Ct. at 1792. Further, if the savings clause were construed to preserve federal common law the main body of the provision would have no effect, as the RTC could bypass the gross negligence standard by alleging a federal common law claim of simple negligence through the savings clause. As the Seventh Circuit noted in *Gallagher*, "[i]t is illogical that Congress intended in one sentence to establish a gross negligence standard of liability and in the next sentence to eviscerate that standard by allowing actions

under [federal] common law for simple negligence." *Gallagher*, 10 F.3d at 420; *see also Miramon*, 22 F.3d at 1362 ("[I]t simply makes no sense that Congress would establish a cause of action in one sentence and then render it a nullity in the next."); *O'Melveny & Myers*, —— U.S. at —— – ——, 114 S.Ct. at 2053–54. In short, because a statute "should be interpreted so as not to render one part inoperative," the RTC's argument fails. *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985) (quotation omitted).

Section 1821(k) establishes gross negligence as the standard for civil damages actions brought by the FDIC or the RTC, and the savings clause should be interpreted simply to preserve these agencies' other regulatory powers. For example, the savings clause preserves the agencies' power to remove directors for simple negligence, or their power to issue "cease and desist" orders in cases of simple negligence. *See* 12 U.S.C. §§ 1818(e)–(g) (authorizing removal of directors); *id.* §§ 1818(b)–(d) (authorizing "cease and desist" orders).[10] Without the savings clause, FIRREA could have been interpreted to withdraw from these agencies the other regulatory powers that they previously possessed. Section 1821(k) "was targeted exclusively at establishing a new uniform threshold in civil suits when the regulators seek monetary damages for depository institution mismanagement. Therefore, the savings clause was drafted to preserve those other regulatory powers whose exercise is mandated even in cases of simple negligence." *Gallagher*, 10 F.3d at 421 (quotation omitted).

█ As section 1821(k) "speaks directly" to the issue of the standard of liability for directors and officers of federally-insured financial institutions, federal common law in this area is preempted. Accordingly, as only federal law applies to this action, and as section 1821(k) establishes gross negligence as the standard for director liability under federal law, Counts One and Three of the

---

10. Indeed, section 1821(k) should be interpreted in the context of the panoply of civil and criminal sanctions available to the federal government against the officers and directors of federally-insured financial institutions.

complaint must be dismissed for failure to state claims upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6).

## III. Preemption of State Law

■ The plain meaning of section 1821(k) also suggests that Congress intended to preempt state law, and thus even if the Court were to conclude that state law applied to this action, Counts One and Three would fail.[11] Federal preemption of state law either can be expressly stated in the language of a statute, or can be implied when Congress has elected to "superintend the field" and state law threatens that superintendence. *City of Milwaukee,* 451 U.S. at 316, 101 S.Ct. at 1792. The defendants argue that section 1821(k) expressly preempts state law, and further argue that the comprehensiveness of the legislative scheme set forth in FIRREA demonstrates Congress' intent to superintend the field of bank regulation. *See* Deft. Camhi's Mem. at 26.

■ In general, the analysis of whether a federal statute preempts state law is somewhat different from that employed to determine whether a statute preempts federal common law. *See City of Milwaukee,* 451 U.S. at 316, 101 S.Ct. at 1792. In considering the preemption of state law, the Court must "start with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (quoting *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977)) (additional citations omitted). This analysis must include "due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power." *Id.* (quoting *San*

*Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 243, 79 S.Ct. 773, 778, 3 L.Ed.2d 775 (1959). As the plain language of a statute is the strongest evidence of congressional intent to preempt state law, however, *see Bonjorno,* 494 U.S. at 835, 110 S.Ct. at 1575, the fact that the preemption of state rather than federal claims is at issue presents no reason to deviate from the previous interpretation of the plain meaning of section 1821(k). *See Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978) (holding federal courts should not hesitate to find either implied or explicit preemption of state law when Congress has so indicated).

■ By its terms section 1821(k) explicitly preempts all state law that sets the standard for the liability of directors or officers at a level higher than gross negligence. Thus the issue is not whether Congress intended section 1821(k) to preempt state law, but the degree to which such preemption was intended. Several elements of the section's language demonstrate that Congress intended to preempt all state law claims.

■ First, because the savings clause states that section 1821(k) does not "impair or affect" the RTC's rights under "other applicable law," the remainder of the section must be read to limit the RTC's rights under *some* law. If Congress intended section 1821(k) simply to strengthen the RTC's power to recover damages from directors of failed financial institutions, it would have drafted the savings clause to state that the section does not "impair or affect any right of the Corporation under *any* applicable law." The more convincing, and perhaps the more rational, reading is to interpret the savings clause to state that nothing shall impair the

---

11. It is noteworthy that the two Circuit Courts to have held that section 1821(k) does not preempt state law considered actions involving banks chartered under state law, *see McSweeney,* 976 F.2d at 533 (9th Circuit); *Canfield,* 967 F.2d at 444 (10th Circuit), while two of the Circuit Courts to determine that section 1821(k) preempted *federal* common law considered actions involving federally chartered banks. *See Gallagher,* 10 F.3d at 418 (7th Circuit); *Gaff,* 919 F.2d at 391; *cf. Miramon,* 22 F.3d at 1358 (5th Circuit) (holding that section 1821(k) preempted federal common law in action involving federal-

ly-insured, state-chartered bank). In *Chapman* the Seventh Circuit concluded that the internal affairs doctrine required the application of federal law to an action involving a federally-chartered bank, and it sought to avoid creating a conflict among the circuits by not reaching the question whether section 1821(k) preempts state law. *See Chapman,* 29 F.3d at 1122. As the logic of the section 1821(k)'s preemption of federal common law applies with equal force to the preemption of state law, the Court addresses the issue below.

RTC's rights under applicable law *other* than state law, as the provision itself impairs the RTC's rights under state law. *See Federal Deposit Ins. Corp. v. Swager,* 773 F.Supp. 1244, 1248 (D.Minn.1991).

Second, section 1821(k) speaks of "gross negligence" and other terms as they "are defined and determined under applicable State law," while the savings clause simply refers to "other applicable law." 12 U.S.C. § 1821(k). Logically, had Congress intended the savings clause to preserve the RTC's rights under "applicable *State* law" it would have used those precise words, as it did at the close of the immediately preceding sentence and elsewhere throughout the section. *See, e.g.,* 12 U.S.C. §§ 1821(c)(1), –(c)(4), –(e)(8)(A), –(g)(1), –(g)(4), –(i).

Third, to interpret the savings clause to preserve state law claims based on lesser degrees of fault, such as simple negligence or breach of a fiduciary duty, would "eviscerate" the gross negligence standard set forth in the body of 1821(k) to the same degree as would occur if such claims were preserved under federal common law. *See Resolution Trust Corp. v. O'Bear, Overholser, Smith & Huffer,* 840 F.Supp. 1270, 1277 (N.D.Ind. 1993) (quoting *Gallagher,* 10 F.3d at 423). Reading the savings clause to preserve state law claims would render the substantive portion of the section surplusage, violating the rule that a statute "should be interpreted so as not to render one part of it inoperative." *Pueblo of Santa Ana,* 472 U.S. at 249, 105 S.Ct. at 2594 (quotation omitted). Rather, as discussed above, the savings clause is best interpreted to preserve the RTC's ability to take other *regulatory* actions based on simple negligence. *See supra* pp. 1128–1129.

■ Thus while the language of section 1821(k) may appear to resist a "plain meaning" interpretation, when read in context the provision leaves no room for claims based upon state law. The statutory language therefore provides the best evidence of congressional intent to preempt state law. *See Bonjorno,* 494 U.S. at 835, 110 S.Ct. at 1575. Section 1821(k) also contains an implied preemption of state law, however, as the overall legislative scheme set forth in FIRREA demonstrates a congressional intent to "superin-tend the field" by nationalizing the law covering the regulation of financial institutions. *See Kimbell Foods,* 440 U.S. at 728–29, 99 S.Ct. at 1458–59; *Gaff,* 919 F.2d at 391 (stating that "[t]he legislative history of [12 U.S.C. section 1821(k)] explicitly states an intent to nationalize the law of directors' and officers' liability when banks are taken over by the FDIC"). The legal relationship between the RTC and federally-insured financial institutions requires national uniformity, and to allow the RTC to bring claims against directors based on state law would frustrate this objective. *See Kimbell Foods,* 440 U.S. at 728–29, 99 S.Ct. at 1458–59; *see also Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); *Rath Packing,* 430 U.S. at 525, 97 S.Ct. at 1309.

■ Finally, the legislative history of section 1821(k) supports a finding that the provision preempts state law. Congress enacted FIRREA to bring order to a chaotic regulatory system, but it did not intend to diminish the ability of financial institutions to recruit competent officers and directors. *See generally* David B. Fischer, Comment, *Bank Director Liability Under FIRREA: A New Defense for Directors and Officers of Insolvent Depository Institutions—Or a Tighter Noose?,* 39 UCLA Law Rev. 1703, 1740–45 (1992) (detailing concerns motivating passage of FIRREA). Congress established gross negligence rather than simple negligence as the standard for director liability to meet this latter objective. The RTC's claims of simple negligence and breach of fiduciary duty under state law therefore are preempted because they "stand[ ] as an obstacle to the accomplishment and execution of the *full* purposes and objectives of Congress." *de la Cuesta,* 458 U.S. at 153, 102 S.Ct. at 3022 (quotation omitted) (emphasis added).

This concern arose explicitly during the debates preceding FIRREA's enactment. The original version of FIRREA, Senate Bill No. 744, would have held directors liable for "any cause of action available at common law, including, but not limited to, *negligence,* gross negligence, willful misconduct, [and] *breach of fiduciary duty . . . .*" S. 774, § 214(n), 101st Cong., 1st Sess. (Calendar

No. 45, April 13, 1989) (emphasis added). Several senators advanced an amendment to change this provision, however, on the ground that the inclusion of lesser standards of liability would curtail drastically the ability of banks and thrifts to attract qualified persons as directors and officers.[12] The Senate passed the amendment containing the following language, which remained in the final bill passed by the Senate:

> (n) Liability—A director or officer of an insured financial institution may be held personally liable ... for gross negligence or intentional tortious conduct, as those terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right, if any, of the Corporation that may have existed immediately prior to the enactment of the FIRRE Act.

135 Cong.Rec. S4451–52 (daily ed. April 19, 1989).

The House of Representatives took up the bill two months later on June 15, 1989. Significantly, the House altered the savings clause in the Senate's version of section 1821(k) to its present wording, but preserved the Senate's removal from the original bill of any references to "simple negligence." *See* H.R. 1278, 101st Cong., 1st Sess., 135 Cong. Rec. H2602 (daily ed. June 15, 1989). After conference with the Senate, the House version of the bill was passed on August 4, 1989.

The RTC relies heavily on the portion of the Senate Report on FIRREA that discussed section 1821(k) in arguing that Congress did not intend to preempt state law. The Report stated:

[Section 1821(k)] enables the FDIC to pursue claims against directors or officers of insured financial institutions for gross negligence (or negligent conduct that demonstrates a greater disregard of a duty of care than gross negligence) or for intentional tortious conduct. This right supersedes State law limitations that, if applicable, would bar or impede such claims. This subsection [ ] does not prevent the FDIC from proving claims under State law or under other applicable Federal law, if such law permits the officers or directors ... to be sued (1) for violating a lower standard of care, such as simple negligence, or (2) on an alternative theory such as breach of contract [or] breach of fiduciary duty....

S.Rep. No. 19, 101st Cong., 1st Sess., 135 Cong.Rec. S6907, 6912 (daily ed. June 19, 1989). The Senate Report was issued on June 19, 1989, however, and it thus had no impact upon the Senate's vote on the bill two months earlier. Further, the Report was issued six weeks before the joint committee passed on the House version, and that committee (which approved the bill eventually passed) issued a markedly different report. The House Conference Report stated:

[Section 1821(k)] preempts State law with respect to claims brought by the FDIC in any capcity [sic] against officers or directors of an insured depository institution. The preemption allows the FDIC to pursue claims for gross negligence or any conduct that demonstrates a greater disregard of a duty of care including intentional tortious conduct.

H.R.Conf.Rep. No. 222, 101st Cong., 1st Sess. 393 (1989), *reprinted in* 1989 U.S.Code

---

12. For example, Senator Terry Sanford of North Carolina explained that changes in the provision are essential if we are to attract qualified officers and directors to serve in our financial institutions. The bill as [first] drafted would have preempted numerous State laws which provide limited indemnification for directors and officers. These State laws were enacted largely in response to problems faced by corporations in attracting good officers and directors. Problems also occurred in obtaining directors and officers insurance due to potential law suits against these directors and officers personally based on even simple negligence claims.

....
The amendment which the managers have accepted modifies the bill to preempt State law only in a very limited capacity. The amendment would permit the FDIC to bring an action ... if the director or officer acted with gross negligence or committed an intentional tort.
135 Cong.Rec. S4276–77 (daily ed. April 19, 1989); *see generally Bank Director Liability Under FIRREA*, 39 UCLA Law Rev. at 1749–50 (discussing quoted text).

Cong. & Admin.News 86, 432, 437. The interpretation of section 1821(k) contained in the House Conference Report is persuasive because its timing reflected the desires of Congress when enacting FIRREA, and because it reflected the interpretation of the joint conference responsible for reconciling the two versions of the bill. *See Garcia v. United States,* 469 U.S. 70, 76, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984) (holding that conference report constitutes the most authoritative source for discerning legislature's intent); *Demby v. Schweiker,* 671 F.2d 507, 510 (D.C.Cir.1981) ("Because the conference report represents the final statement of terms agreed to by both houses, next to the statute itself it is the most persuasive evidence of congressional intent."). Indeed, the Senate Report must be discounted as a declaration of congressional intent because it was issued well after the Senate voted on its initial version of the bill. *See Miramon,* 22 F.3d at 1362; *see also Clarke v. Securities Indus. Ass'n,* 479 U.S. 388, 407, 107 S.Ct. 750, 761, 93 L.Ed.2d 757 (1987) (disregarding word inserted into record after passage of the McFadden Act, even though the comments were inserted by Representative McFadden); *de la Cuesta,* 458 U.S. at 167 & n. 19, 102 S.Ct. at 3029 & n. 19 (noting that post-enactment statements do not carry the same weight as do those of the contemporaneous legislative history).

The RTC's argument at best demonstrates that the legislative history to section 1821(k) sends conflicting signals. This history simply does not demonstrate, however, the kind of "clearly expressed legislative intention" needed to overcome the plain meaning of the statute. *See Bonjorno,* 494 U.S. at 833–34, 110 S.Ct. at 1574–75. Rather, section 1821(k) should be read to preempt both federal common law and state law as this is the "interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested." *Commissioner v. Engle,* 464 U.S. 206, 217, 104 S.Ct. 597, 604, 78 L.Ed.2d 420 (1984) (quotation omitted); *Norfolk Redev. & Hous. Auth. v. Chesapeake & Potomac Tel. Co.,* 464 U.S. 30, 104 S.Ct. 304, 78 L.Ed.2d 29 (1983); *see also Canfield,* 967 F.2d at 451–52 (Brorby, J., dissenting).

### CONCLUSION

For the reasons stated above, the defendants' objections to Magistrate Judge Eagan's Recommended Ruling are sustained and the defendants' motions to dismiss [## 75, 78, 85, 90, 96, 100, 101, 102] are each hereby GRANTED such that Counts One and Three of the RTC's complaint are ORDERED dismissed. The RTC shall file an amended complaint in accordance with this Ruling by September 6, 1994.

SO ORDERED.