**RESOLUTION TRUST CORPORATION, Plaintiff,**

v.

**Oscar ZIMMERMAN, et al., Defendants.**

**No. 1:93 CV 2266.**

United States District Court, N.D. Ohio, Eastern Division.

May 27, 1994.

Sophia Papandreas Tjotjos, Daniel F. Gourash, Porter, Wright, Morris & Arthur, Cleveland, OH, for Resolution Trust Corp.

Mark B. Cohn, Jeffrey Arthur Huth, Mark B. Cohen, McCarthy, Lebit, Crystal & Haiman, Robert A. Goodman, Daniel D. Domozick, Goodman, Weiss & Freedman, Cleveland, OH, for Oscar Zimmerman.

Gregory Zimmerman, pro se.

Egidijus Marcinkevicius, Law Offices of Algis Sirvaitis, Cleveland, OH, for Almis J. Stempuzis.

Steven B. Potter, Irwin Jerome Dinn, Dinn, Hochman & Potter, Cleveland, OH, for Carol Downs.

## *ORDER*

SAM H. BELL, District Judge.

Defendants Oscar and Gregory Zimmerman have moved individually to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Docket ## 16 & 22. Both motions were argued on May 9, 1994.

### *STATEMENT OF FACTS*

According to the Complaint, each defendant is a former officer and director of the Superior Federal Savings Association, located in Cleveland, Ohio. Oscar Zimmerman served on Superior's board from 1974 to 1978, and again from March 5, 1984 until February 26, 1985. Gregory Zimmerman sat on the board initially from February 26, 1980 through March 5, 1984. He returned to the board on February 26, 1985 and remained until the end of 1990. In addition, Gregory Zimmerman served as president of the association for an eleven year period stretching from February of 1980 to October 23, 1990. Complaint, ¶¶ 6, 7.

Plaintiff ("RTC") alleges that Superior's board engaged in unsound lending practices throughout the periods in which the defendants were board members. On October 4, 1990, the United States Department of the Treasury's Office of Thrift Supervision ("OTS") notified appropriate authorities in

the State of Ohio's Department of Commerce that grounds existed under the Home Owners' Loan Act of 1933 to appoint RTC as receiver for Superior. The Department returned its written approval of the appointment to the OTS on October 19, 1990. On October 23, 1990, Superior's board received notice that the RTC had been appointed receiver.

RTC brought suit against four former officers and directors on October 22, 1993, alleging negligence, gross negligence, breach of contract and breach of fiduciary duty. RTC sought leave to amend its complaint on February 14, 1994 and appended a claim for unjust enrichment. In their present motions, the Zimmerman defendants assert, *inter alia*, that each of RTC's claims is either time-barred or preempted by federal statute.

## STANDARD OF REVIEW

When considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is constrained to accept as true the allegations of the complaint. *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983), *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Lee v. Western Reserve Psychiatric Habilitation Center,* 747 F.2d 1062, 1065 (6th Cir.1984). The motion to dismiss under 12(b)(6) should be denied unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Nishiyama v. Dickson Cty.,* 814 F.2d 277, 279 (6th Cir.1897) (*en banc*). With these standards in mind, the court will scrutinize the complaint in order to determine whether it states a viable cause of action.

## LAW AND ANALYSIS

The parties have expended a considerable amount of energy debating which limitations period governs this action. Before reaching that question, however, the Court must consider the preemptive scope of 12 U.S.C.

§ 1821(k) and its impact upon RTC's claims, both state and federal.

## I. Preemption.

Section 1821(k) of Title 12 concerns the liability of officers and directors of insured depository institutions. It states in relevant part:

> A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation ... acting as conservator or receiver of such institution ... for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

12 U.S.C. § 1821(k). As this Court previously acknowledged, those courts considering the issue have not agreed on the preemptive reach of this statute. *F.D.I.C. v. Bates,* 838 F.Supp. 1216, 1218 (N.D.Ohio 1993) (Matia, J.). Some courts have held that § 1821(k) preempts both state and federal common law; other courts have ruled that the statute preempts federal, but not state, common law; and still others have found that § 1821(k) displaces neither state nor federal common law. *Id.* Nonetheless, while the ultimate conclusions differ, the arguments typically raised in support of and against preemption are identical, regardless of whether state or federal preemption is at issue.

In both contexts, the preemption debate centers, quite properly, around the language of § 1821(k) itself. Those courts rejecting preemption arguments commonly focus on two features of the statute. First, they place emphasis on Congress's use of the unmodified verb "may" (i.e., "may be held liable ... for gross negligence") instead of the phrase "may only," reasoning that Congress would have employed the latter phrase had it wished to displace all other standards of

liability. *FDIC v. McSweeney,* 976 F.2d 532, 537 (9th Cir.1992). In addition, courts avoiding preemption point to the statute's final sentence, which provides, "Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law." 12 U.S.C. § 1821(k). This savings clause, it is argued, preserves the field of state and/or federal common law from § 1821 preemption. *McSweeney, id.* at 538; *FDIC v. Canfield,* 967 F.2d 443, 446 (10th Cir.1992) (*en banc*). Resting primarily on this interpretation of the statute's text, the *McSweeney* and *Canfield* courts concluded that § 1821(k) does not preempt state law negligence claims.

In determining that § 1821(k) *does* displace federal common law claims, the Seventh Circuit Court of Appeals recently rejected the interpretation of the statute approved in *McSweeney* and *Canfield.*[1] *Resolution Trust Corporation v. Gallagher,* 10 F.3d 416 (7th Cir.1993). Regarding Congress's failure to modify the verb "may" with the adverb "only," the court in *Gallagher* joined the dissent in *Canfield,* reasoning:

> "Read in context, the word 'may' refers to the right of the [RTC] to bring an action under this section. 'May' cannot reasonably be read to qualify the gross negligence liability standard and is therefore irrelevant to the substance of the provision."

*Gallagher,* 10 F.3d at 420, *quoting Canfield,* 967 F.2d at 450 n. 4 (Borby, J., dissenting). Similarly, the Seventh Circuit court determined that the savings clause did not bar preemption. Were it construed to do so, the court reasoned, the clause would render superfluous the gross negligence standard specifically created by the statute. *Id.* The court adopted what it felt was a "better reading," under which the clause simply preserves the RTC's right to take regulatory action to combat simple negligence. *Id.* at 420–421, *citing* David B. Fischer, Comment, *Bank Director Liability Under FIRREA: A New Defense for Directors and Officers of Insolvent Depository Institutions—Or a* *Tighter Noose?,* 39 UCLA L.Rev. 1703, 1771 (1992).

In rejecting the common arguments against preemption, the Seventh Circuit in *Gallagher* concluded that Congress's intent to establish a single, federal negligence standard for director liability was manifest in the plain language of the statute itself:

> The plain language of § 1821(k) "speaks directly" to the issue presented in this case.... That section provides: "[a] director or officer ... may be held personally liable for monetary damages ... for *gross negligence* ...." It is hard to imagine a more definite statement by Congress that a gross negligence standard of liability applies to cases brought by the RTC against officers and directors of failed financial institutions. Consequently, federal common law, which may or may not allow an officer or director to be held liable for less culpable conduct than gross negligence, must yield....

*Gallagher,* 10 F.3d at 420 (emphasis in the original quotation).

The *Gallagher* court bolstered its conclusion with reference to § 1821(k)'s legislative history, noting, *inter alia,* that the Conference Report which accompanied the proposed legislation states:

> [Section 1821(k)] preempts State law with respect to claims brought by the FDIC in any capacity against officers or directors of an insured depository institution. The preemption allows the FDIC to pursue claims for gross negligence or any conduct that demonstrates a greater disregard of a duty of care, including intentional tortious conduct.

*Id.* at 421, *quoting* H.R.Conf.Rep. No. 222, 101st Cong., 1st Sess. 393, 398 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 432, 437. In the *Gallagher* court's view, this language plainly demonstrates Congress's intent to make directors and officers liable solely for conduct amounting to or exceeding gross negligence. *Id.* The court also observed that the House Banking Committee had rejected a proposed amendment that would

---

1. The Seventh Circuit court did not reach the question of whether § 1821 preempts state law claims.

have reintroduced a simple negligence standard for officers and directors. *Id.* at 423. Having canvassed the entire legislative history, the court concluded, "we believe that the most persuasive forms of legislative history are consistent with the plain language of § 1821(k) and demonstrate that Congress intended to preempt federal common law in this area." *Id.*

In an opinion heavily cited by the present parties, the district court for the Northern District of Indiana built upon the *Gallagher* decision in determining that the preemptive scope of § 1821(k) extends to state, as well as federal, common law. *Resolution Trust Corporation v. O'Bear,* 840 F.Supp. 1270 (N.D.Ind.1993). The *O'Bear* court stressed the conspicuous fact that the Congressional Report (quoted above) relied on in *Gallagher* "specifically notes that § 1821(k) preempts state law...." *Id.* at 1277. In addition, the court reasoned, enforcement of state law claims would unduly interfere with the intended federal supervision of the field. *Id., citing City of Milwaukee v. Illinois,* 451 U.S. 304, 316, 101 S.Ct. 1784, 1792, 68 L.Ed.2d 114 (1981).

In summation, the *O'Bear* court stated:

Congress has undisputed power to determine the incentives and potential liabilities to being a director of a federally insured savings institution. It exercised that power with § 1821(k), and stated as much in the Conference Report.... This incursion into the states' historic police power is limited in its application to federally insured institutions. The court therefore finds, based upon *Gallagher II*'s [*Resolution Trust Corp. v. Gallagher,* 800 F.Supp. 595 (N.D.Ill.1992)] construction of the statute and this court's application of *City of Milwaukee,* that any state-law claims pleaded by RTC ... are pre-empted by federal statute.

*Id.*

Each of the competing interpretations of § 1821(k) has some merit. Nonetheless, this court finds the reasoning of the *Gallagher* and *O'Bear* courts more persuasive, especially when considered in conjunction with the legislative history of § 1821(k). *See, e.g.,* H.R.Conf.Rep. No. 222, 101st Cong., 1st Sess. 393, 398 (1989), *reprinted in* 1989 U.S.C.C.A.N. 432, 437 (quoted above at 6–7). This conclusion is consistent with, and indeed compelled by, the Sixth Circuit Court of Appeals' opinion in *Gaff v. FDIC,* 919 F.2d 384 (6th Cir.1990).

In *Gaff v. FDIC,* the circuit court was asked to decide whether state or federal common law determined the priority of claims of stockholders against directors of an insolvent bank under the FDIC's control. The court held that federal legislation creating and governing the national bank insurance program had preempted state law and made a uniform rule of federal common law applicable. *Id.* at 387–388.

The *Gaff* court drew support for its holding concerning preemption from several provisions of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, including § 1821(k). *Id.* at 390. As the court explained:

Congress [in § 1821(k)] has clearly indicated that the liability of officers and directors of a bank are determined under federal law.... The legislative history of this provision explicitly states an intent to nationalize the law of directors' and officers' liability when banks are taken over by the FDIC.

*Id.* at 391. In light of this language, it must be concluded that the Sixth Circuit, if directly confronted with the issue, would accept the interpretations of § 1821(k) offered in *Gallagher* and *O'Bear.* Indeed, this Court has previously relied on *Gaff* to determine that § 1821(k) displaces federal common law claims against directors and officers of insolvent institutions. *Bates,* 838 F.Supp. 1216. We now take the necessary, following step and hold that state law claims are similarly preempted. Therefore, counts one, three and five of the amended complaint must be dismissed.

Count four and count six—the claims for breach of implied contract and unjust enrichment—must also be dismissed. The Court doubts very seriously RTC's ability under Ohio law to resurrect its claim for breach of a fiduciary duty as additional, independent claim arising under contract law. *See Nixon*

*v. Bank One of Eastern Ohio, N.A.*, 74 Ohio App.3d 550, 599 N.E.2d 742 (Franklin Co. 1991); *Squire v. The Guardian Trust Co.*, 79 Ohio App. 371, 35 O.O. 144, 72 N.E.2d 137 (Cuyahoga Co.1947). *See also O'Bear*, 840 F.Supp. at 1278; *FDIC v. Mintz*, 816 F.Supp. 1541, 1546 (S.D.Fla.1993); *FDIC v. Dannen*, 747 F.Supp. 1357 (W.D.Mo.1990). *But see Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 12 O.B.R. 246, 465 N.E.2d 1298 (1984).

Regardless, the Court agrees with the conclusion reached in *O'Bear*: state law claims against former directors and officers of an institution in receivership, which stem from or implicate the defendants' alleged failure to act with "due care," fall within the preemptive reach of § 1821(k). *O'Bear*, 840 F.Supp. at 1278. *See also Gaff*, 919 F.2d at 391. Therefore, counts four and six of the amended complaint must be dismissed.

## II. The Limitations Period.

Count Two of the Amended Complaint charges both defendants with gross negligence; accordingly, it states a claim under 12 U.S.C. § 1821(k) and survives preemption. At the March 9 hearing, Defendant Oscar Zimmerman conceded (and Defendant Gregory Zimmerman did not deny) that RTC's claim for gross negligence, grounded as it is in § 1821(k), arose independent of state law at the time of RTC's appointment. *O'Bear*, 840 F.Supp. at 1280. Thus, Defendants have waived their "non-viability" argument. The remaining issue to be considered, therefore, is whether the gross negligence claim must be dismissed as untimely filed.

The limitations periods governing claims brought by the RTC in its capacity as receiver are codified at 12 U.S.C. § 1821(d)(14), which states:

(A) Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be ... (ii) in the case of any tort claim, the longer of—(I) the 3–year period beginning on the date the claim accrues;

or (II) the period applicable under State law.

(B) For purposes of subparagraph (A), the date on which the statute of limitation [sic] begins to run on any claim described in such subparagraph shall be the later of— (i) the date of the appointment of the Corporation as conservator or receiver; or (ii) the date on which the cause of action accrues.

12 U.S.C.A. § 1821(d)(14) (1989). The parties agree that the statute of limitations applicable to the gross negligence claim began to run on the date RTC was appointed receiver of Superior. They disagree, however, on the exact date of appointment.

Defendants argue that RTC's appointment took place on October 4, 1990, the date on which the Office of Thrift Supervision determined that receivership was necessary. Alternatively, they allow that the appointment may not have become final until the Ohio Department of Commerce's Division of Savings and Loan Associations approved the appointment on October 19, 1990. In either case, Defendants reason, the three-year limitation period provided by subparagraph (A)(ii)(I) had expired prior to RTC's filing on October 22, 1993.

RTC, however, insists that its appointment was not complete until October 23, 1990, the date on which it formally accepted appointment and took possession of Superior. If this is true, RTC's complaint dated October 22, 1993, was filed within three years of the appointment. Moreover, RTC maintains, the debate over the precise appointment date is irrelevant insofar as the four-year limitations period provided in subparagraph (A)(ii)(II) [2] —and not the three year window supplied in (A)(ii)(I)—applies to its gross negligence claim.

On the latter point, RTC is plainly incorrect. All parties agree that the gross negligence claim derives from a federal statute. Hence, the claim does *not* arise under state law, and there is *no* statute of limitations *applicable* under state law. Thus, subparagraph (A)(ii)(II) does not apply. We are left with the three year period provided in sub-

---

**2.** Ohio Revised Code § 2305.09 provides a four year statute of limitations for tort claims.

paragraph (A)(ii)(I). *See O'Bear,* 840 F.Supp. at 1280 ("For claims created by federal statute, there simply is not an 'applicable state statute of limitations' to consider"); *Bates,* 838 F.Supp. at 1217 (applying three-year federal statute of limitations to § 1821(k) gross negligence claim). Consequently, the fate of the remaining claim hinges on the exact date of RTC's appointment.

Under the law as it existed in 1990, the Director of the Office of Thrift Supervision possessed the authority to appoint a receiver for a federally insured state savings association upon determining that certain grounds for appointment, provided by statute, existed. 12 U.S.C. § 1464(d)(2)(C) (Supp. II 1991). However, the Director was required to obtain written approval from the state official with jurisdiction over the institution (or wait thirty days for such approval) before exercising the appointment power. 12 U.S.C. § 1464(d)(2)(D) (Supp. II 1991) (amended 1991).

Before the 1991 amendment, Section 1821(c)(6)(B) of Title 12 provided:

Whenever the Director of the Office of Thrift Supervision appoints a receiver under the provisions of section 1464(d)(2)(C) of this title for the purpose of liquidation or winding up any savings association's affairs ... during the 3–year period beginning on August 9, 1989, *the Resolution Trust Corporation shall be appointed....*

12 U.S.C.A. § 1821(c)(6)(B) (1989) (emphasis added). Despite the mandatory terms of this section, RTC maintains that it retained the right to refuse appointment.

RTC attempts to draw significance from its general discretion to accept or deny the receivership of a state savings association. Section 1821(c)(3)(A) of Title 12 states:

Whenever the authority having supervision of any insured State depository institution ... appoints a conservator or receiver for such institution *and tenders appointment*

to the Corporation, the Corporation *may accept* such appointment.

12 U.S.C.A. § 1821(c)(3)(A) (1989) (emphasis added). But RTC ignores the limitation placed on its discretion by former § 1821(c)(6).[3] As reiterated by the Seventh Circuit in *Gallagher,* "'It is a cardinal principle of statutory construction that the more specific controls over the general.'" 10 F.3d at 420, *quoting Central Commercial Co. v. Commissioner,* 337 F.2d 387, 389 (7th Cir. 1964). Subparagraph (c)(6) of § 1821 concerning OTS appointment plainly supersedes the general provisions of subparagraph (c)(3) in this instance.

Since RTC lacked discretion to refuse the appointment made by the OTS, that appointment became effective (and thus the prescriptive period began to run) on the date the appropriate state official gave her written consent. *Cf. Resolution Trust Corporation v. Miramon,* No. 92–2627, 1993 WL 262710 (E.D.La. July 6, 1993) (appointment under analogous provisions of 12 U.S.C. § 1729(c) effective once state authority consents); *Franklin Savings Association v. Director,* 740 F.Supp. 1535 (D.Kan.1990) (state concurrence a prerequisite to effective appointment).

The Acting Superintendent of the Division of Savings and Loan Associations, Ohio Department of Commerce, provided written approval of RTC's appointment on October 19, 1990. RTC's failure to file its gross negligence claim within three years of that date, as required by 12 U.S.C. § 1821(d)(14), is grounds for dismissal.

## CONCLUSION

This Court, like all others, must be ever wary of exigencies (including the savings and loan crisis) which purportedly justify deviation from established principles of law. It may not ignore precedent in this Circuit determining the preemptive scope of federal legislation simply to protect novel or former-

---

**3.** In oral argument, RTC suggested for the first time that § 1821(c)(6) is applicable only in situations in which OTS appoints a receiver without first receiving state approval and is therefore inapplicable in the instant case in which state approval was granted. The section itself, however, contains no such limitation. On the contrary, it purports to govern *all* appointments made by OTS pursuant to § 1464(d)(2)(C) of Title 12. And as we have previously explained, the Director of OTS may not exercise authority pursuant to § 1464(d)(2)(C) without first seeking state approval. 12 U.S.C. § 1464(d)(2)(D).

ly viable common law claims. Nor may it permit a party to advance untimely claims, no matter how meritorious, by dismissing the statute of limitations as if it were a needless or troublesome "technicality."

For the foregoing reasons, Defendants' motions to dismiss (docket ## 16 & 22) are granted.

IT IS SO ORDERED.