**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Community National Bank of Glastonbury**

v.

**Frank S. RAFFA, George W. Hannon, Jr., Allen M. DePersia, Peter B. Deich, Robert B. Doyle, William A. Fochi, Barbara K. Bailey, Raymond S. Derr, Pamela S. Diamond, Robert F. Dickau, Sr., Paul E. DiSanto, George E. Durstin, and Robert Saglio.**

Civ. No. 3:94CV21(AVC).

United States District Court,
D. Connecticut.

March 30, 1995.

---

Steven L. Feldman, Mark S. Baldwin and John Russotto of Brown, Rudnick, Freed & Gesmer, Hartford, CT, and Jane W. Glander, Emmett, Fins & Glander, Stamford, CT, for F.D.I.C.

Kenneth A. Cohen, Goodwin, Procter & Hoar, Boston, MA, for defendants.

COVELLO, District Judge.

Over objection, the recommended ruling is approved, ratified and adopted.

It is so ordered.

### RECOMMENDED RULING ON DEFENDANTS' MOTIONS TO DISMISS AND MOTIONS FOR PARTIAL JUDGMENT ON THE PLEADINGS
#### (# 105, 107, 114, 124, 125, 138, 190, 195–1, 195–2)

EAGAN, United States Magistrate Judge.

This Court has been asked to determine the appropriate standard of liability to which the officers and directors of Community National Bank of Glastonbury, Connecticut (CNB), a federally chartered financial institution, are to be held accountable.

The FDIC contends that the officers and directors of CNB are liable for simple negligence, gross negligence, and for breach of fiduciary duty in violation of applicable Connecticut law,[1] as well as gross negligence in

---

1. Connecticut law regarding the liability of offi-        cers and directors is well established. *See e.g.,*

violation of applicable federal law. The defendants contend they are liable only for gross negligence, or conduct in excess of gross negligence, in accord with federal law.[2]

The defendants set forth three reasons why these motions should be granted. First, 12 U.S.C. § 1821(k) explicitly preempts state law and establishes a uniform standard of liability of gross negligence for officers and directors of financial institutions. Second, even if state law were applicable in general, here, CNB is a federally chartered bank. Defendants contend that only federal law applies to the liability of officers and directors of a federally chartered bank. Third, the defendants assert that the application of state law to a federally chartered bank violates principles of federalism.

For the following reasons, the Court finds that 12 U.S.C. § 1821(k) does not preempt state law. Officers and directors of CNB may be liable for simple negligence, gross negligence, or for breach of fiduciary duty. Further, the fact that CNB is federally chartered does not immunize CNB's officers and directors from liability under state law. Finally, the application of state law to a federally chartered financial institution does not violate principles of federalism. Therefore, defendants' Motions to Dismiss and Motions for Judgment on the Pleadings are all DENIED.[3]

## I. BACKGROUND

When determining the validity of a motion to dismiss, the Court must assume all facts alleged to be true, drawing all reasonable inferences in favor of the plaintiff. *Update Traffic Systems, Inc. v. Gould*, 857 F.Supp. 274, 279 (E.D.N.Y.1994) (citing, *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2nd Cir.1993)). *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A motion to dismiss will be granted only if it is clear that the plaintiff can prove no set of facts as grounds for relief. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2nd Cir.1994) (citing, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

For the purposes of deciding these motions, the Court accepts as true the following facts and allegations. CNB commenced banking operations on July 15, 1985, as a national banking institution. On January 11, 1991, the Office of the Comptroller of the Currency declared CNB to be insolvent and the bank was closed. The defendants in this action all served as either officers or directors of CNB during its period of operation. The FDIC contends that the failure of CNB was due, in part, to the misconduct of the defendants. This action has been brought against thirteen (13) former officers and directors of CNB. The complaint sets forth four causes of action: (1) state common law negligence, (2) state common law gross negligence, (3) gross negligence under 12 U.S.C. § 1821(k); and (4) state law breach of fiduciary duty.[4] The defendants seek to dismiss Counts I, II, and IV of the Complaint.

---

*Ferris v. Polycast Technology Corp.*, 180 Conn. 199, 206, 429 A.2d 850 (1980) (a director must inform himself sufficiently about the business of the corporation that he directs so that he may act with intelligence in carrying out corporate business); *Katz Corp. v. T.H. Canty & Co. Inc*, 168 Conn. 201, 207, 362 A.2d 975 (1975) (citations omitted) (officers and directors occupy a fiduciary relationship to the corporation and its stockholders); *Bator v. United Sausage Co.*, 138 Conn. 18, 22, 81 A.2d 442 (1951) (officers of a corporation have duty to exercise best, independent judgment in management of affairs).

2. *See* 12 U.S.C. § 1821(k).

3. On June 20, 1994, Defendant Robert Saglio filed a Motion for Partial Judgment on the Pleadings (# 105). Thereafter, Defendants George W. Hannon (# 107), Pamela S. Diamond (# 125), Frank S. Raffa (# 138), Robert B. Doyle and

George E. Durstin (# 190), and Peter B. Deich, William A. Fochi, Barbara K. Bailey, Raymond S. Derr, and Robert F. Dickau, Sr. (# 195–1) all adopted Saglio's motion. On June 23, 1994, Paul E. DiSanto filed a Motion to Dismiss Counts 1 and 4 of the Amended Complaint (# 114). Thereafter, Defendants Diamond (# 124), Deich, Fochi, Bailey, Derr, and Dickau, (# 195–2) all adopted Disanto's motion. The standard of review under 12(b)(6) and 12(c) is virtually the same. Therefore, for convenience, the Court will regard all motions to dismiss Counts I, II and IV of the Amended Complaint as Motions to Dismiss.

4. During oral argument, counsel stated that the FDIC would assert a claim of federal common law simple negligence if the Court were to reject the FDIC's state law claims. Because the Court concludes that state law does apply, an examina-

## II. DISCUSSION

Courts are sharply divided over the determination of the proper standard of care applicable to an officer or director of a financial institution. Some courts hold that officers and directors are only liable for gross negligence under federal law.[5] Other courts hold that officers and directors may also be liable for claims of simple negligence, or breach of fiduciary duty, if such claims are cognizable pursuant to state law.[6] This issue has even split district courts within the Second Circuit.[7]

### A. 12 U.S.C. § 1821(k)

■ A determination of the applicable liability of an officer or director of a financial institution requires the construction of Section 212(k) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821(k). Statutory interpretation begins with the plain language of the law. *Federal Deposit Insurance Corp. v. Canfield*, 967 F.2d 443, 445 (10th Cir.), *cert. dismissed*, —— U.S. ——, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992). Absent a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive. *Id.* (quoting *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 833–34, 110 S.Ct. 1570, 1574–75, 108 L.Ed.2d 842 (1990)).

12 U.S.C. § 1821(k) provides:

A director or officer of an insured depository institution **may be held personally liable** for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation—

(1) acting as conservator or receiver of such institution,

(2) acting based upon a suit, claim or cause of action purchased from, assigned by, or otherwise conveyed by such receiver or conservator, or

(3) acting based upon a suit, claim or cause of action purchased from, assigned by, or otherwise conveyed in whole or in part by an insured depository institution or its affiliate in connection with assistance provided under § 1823 of this title, **for gross negligence**, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined under applicable State law. **Nothing in this**

---

tion of federal common law is not necessary. However, if such a claim were asserted, this Court agrees with the growing majority of jurisdictions which conclude that 12 U.S.C. § 1821(k) preempts federal common law. *See Federal Deposit Insurance Corp. v. Bates*, 42 F.3d 369, 372 (6th Cir.1994) (savings clause of § 1821(k) does not preserve federal common law claims); *Resolution Trust Corp. v. Gallagher*, 10 F.3d 416, 421–424 (7th Cir.1993) (legislative history of § 1821(k) indicates Congressional intent to preempt federal common law); *Resolution Trust Corp. v. Camhi*, 861 F.Supp. 1121, 1128–29 (D.Conn.1994) (because § 1821(k) "speaks directly" to standard of liability for officers and directors, federal common law is preempted).

5. *See, e.g., Resolution Trust Corp. v. Chapman*, 29 F.3d 1120, 1122 (7th Cir.1994); *Gaff v. Federal Deposit Ins. Corp.*, 919 F.2d 384, 391 (6th Cir. 1990) (dicta), *modified on other grounds*, 933 F.2d 400 (6th Cir.1991); *Resolution Trust Corp. v. Zimmerman*, 853 F.Supp. 1016, 1020 (N.D.Ohio 1994); *Resolution Trust Corp. v. O'Bear, Overholser, Smith & Huffer*, 840 F.Supp. 1270, 1276–1277 (N.D.Ind.1993); *Federal Deposit Ins. Corp. v. Swager*, 773 F.Supp. 1244, 1248 (D.Minn.1991).

6. *See, e.g., Federal Deposit Ins. Corp. v. McSweeney*, 976 F.2d 532, 541 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993); *Federal Deposit Ins. Corp. v. Canfield*, 967 F.2d 443, 449 (10th Cir.) (en banc), *cert. dismissed*, —— U.S. ——, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992); *Washington Bancorporation v. Said*, 812 F.Supp. 1256, 1265 (D.D.C.1993); *Resolution Trust Corp. v. Heiserman*, 839 F.Supp. 1457, 1462 (D.Colo.1993); *Resolution Trust Corp. v. DiDomenico*, 837 F.Supp. 623, 626–627 (D.N.J.1993); *Resolution Trust Corp. v. Gibson*, 829 F.Supp. 1103, 1109 (W.D.Mo.1993); *Resolution Trust Corp. v. Hess*, 820 F.Supp. 1359, 1364 (D.Utah 1993); *Federal Sav. and Loan Ins. Corp. v. Shelton*, 789 F.Supp. 1360, 1365 (M.D.La. 1992); *Federal Deposit Insurance Corp. v. Isham*, 777 F.Supp. 828, 832 (D.Colo.1991); *Federal Deposit Ins. Corp. v. Black*, 777 F.Supp. 919, 922 (W.D.Okla.1991).

7. *Compare Resolution Trust Corp. v. Gregor*, 872 F.Supp. 1140 (E.D.N.Y.1994) (both state and federal law applies to officers and directors of a federally chartered financial institution) *with Resolution Trust Corp. v. Camhi*, 861 F.Supp. 1121 (D.Conn.1994) (12 U.S.C. § 1821(k) preempts state law).

paragraph shall impair of affect any right of the Corporation under other applicable law.

12 U.S.C. § 1821(k) (emphasis added).

### 1. § 1821(k) Does Not Explicitly Preempt State Law

■ The defendants contend that the first sentence of § 1821(k) establishes a uniform standard of liability of gross negligence for officers and directors of financial institutions and explicitly preempts state law recognizing claims for simple negligence or for breach of fiduciary duty. The defendants argue that an important purpose of federal banking regulation is to establish uniform national standards governing the operation of federally insured financial institutions. Defendants assert that FIRREA was enacted to establish such a uniform standard of liability for directors and officers of financial institutions. Defendants reason that state law allowing a lesser standard of liability conflicts with FIRREA's purpose of national uniformity. Further, the defendants contend that the preservation of state law simple negligence claims would eviscerate 1821(k)'s gross negligence standard. The Court does not agree.

■ Preemption of state law should not be presumed absent a clear manifestation of federal intent. *Canfield*, 967 F.2d at 448. Here, the plain language of § 1821(k) states: "[a] director or officer of an insured depository institution **may be held personally liable** ... **for gross negligence.**" 12 U.S.C. § 1821(k) (emphasis added). If Congress intended to preempt state law and limit the FDIC only to claims alleging gross negligence, Congress would have inserted the words "may only ... be liable for gross negligence" in the statute. *Federal Deposit Insurance Corp. v. McSweeney*, 976 F.2d 532, 537 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993). Defendants' interpretation tortures the statutory language chosen by Congress. *Id. See Rose v. Rose*, 481 U.S. 619, 627–628, 107 S.Ct. 2029, 2034–35, 95 L.Ed.2d 599 (1987) (Congress' choice of word "may" authorizing action by federal agency does not imply exclusivity and does not imply preemption of state law); *Resolution Trust Corp. v. Light-*

*foot*, 938 F.2d 65, 66–67 (7th Cir.1991) ("may" does not, on its face, mean "may only"); *Federal Deposit Insurance Corporation v. McSweeney*, 772 F.Supp. 1154, 1158 (S.D.Cal. 1991) (standard norms of statutory construction prohibit court from implying exclusivity when Congress has not used exclusive language), *affirmed*, 976 F.2d 532 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993).

The last sentence of § 1821(k) also supports the conclusion that § 1821(k) does not preempt state law. The last sentence is a savings clause which provides: "Nothing in this paragraph shall impair or affect any right of the [FDIC] under other applicable law." *See* 12 U.S.C. § 1821(k). If Congress intended to protect officers and directors of financial institutions from state claims for simple negligence or for breach of fiduciary duty, Congress would have no reason to preserve "other applicable law."

By saving "other applicable law," Congress left it to the states to decide the propriety of a simple negligence standard. *Canfield*, 967 F.2d at 448. Unlike a legislature, this Court is not in a position to consider the possible detrimental policy implications of a simple negligence standard of liability. Instead, this Court may consider only whether the statute prohibits the FDIC from pursuing the state law claims it has brought against the defendants. On its face, section 1821(k) does not do so. *Id. But see Resolution Trust Corp. v. Camhi*, 861 F.Supp. 1121, 1130 (D.Conn. 1994) ("Congress enacted FIRREA to bring order to a chaotic regulatory system, but it did not intend to diminish the ability of financial institutions to recruit competent officers and directors").

■ Further, contrary to defendants contention that the gross negligence standard of § 1821(k) is eviscerated by an interpretation which preserves state law, here, state law claims are preserved only in states which recognize a lesser standard of liability, such as simple negligence. In those states that immunize officers and directors from liability, § 1821(k) preempts state law and mandates gross negligence as a minimum standard. *See Resolution Trust Corp. v. Gregor*, 872 F.Supp. 1140, 1148–49 (E.D.N.Y.1994); *Fed-*

*eral Deposit Insurance Corp., v. Black,* 777 F.Supp. 919, 921 (W.D.Okl.1991). *But see Resolution Trust v. Camhi,* 861 F.Supp. 1121, 1130 (D.Conn.1994) ("Reading the savings clause to preserve state law claims would render the substantive portion of the section surplusage ...").

## 2. FIRREA Was Enacted to Strengthen the Ability of Regulators to Protect the Federal Deposit Insurance Fund

■ The goal in construing a statute is to ascertain the statute's purpose in order to give effect to the legislative will of Congress. *Federal Deposit Insurance Corp. v. McSweeney,* 976 F.2d 532, 537 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993). Nowhere in FIRREA does Congress indicate an intent to create a national uniform standard of gross negligence for officers and directors of financial institutions. *Id.* at 538–539; *Federal Deposit Insurance Corp. v. Canfield,* 967 F.2d 443, 445 (10th Cir.), *cert. dismissed,* —— U.S. ——, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992). *But see Resolution Trust Corp. v. Camhi,* 861 F.Supp. 1121, 1130 (D.Conn.1994) (legal relationship between the RTC and federally-insured financial institutions requires national uniformity).

■ To the contrary, at the time of FIRREA's enactment, financial institutions were "falling like ninepins." *Resolution Trust Corp. v. Chapman,* 29 F.3d 1120, 1126 (7th Cir.1994) (Posner, J., dissenting). In an effort to protect officers and directors, a number of states passed laws limiting the liability of directors for the mismanagement of corporate affairs. *Id.; McSweeney,* 976 F.2d at 539. One of the stated purposes of FIRREA was to strengthen the civil sanctions available to federal regulators of depository institutions in order to prevent states from shielding officers and directors of financial institutions from liability. *McSweeney,* 976 F.2d at 537, (quoting Pub.L. No. 101–73, § 101(9), (10), 103 Stat. 183, 187 (1989) (reprinted in 12 U.S.C. § 1811 note (Supp. II 1990) (Purposes of 1989 Amendment)). *See Resolution Trust Corp. v. Rahn,* 854 F.Supp. 480, 486 (W.D.Mich.1994) (purpose of FIRREA was to strengthen powers of federal

regulators); *Resolution Trust Corp. v. Gibson,* 829 F.Supp. 1110, 1119 (W.D.Mo.1993) (defendants' interpretation actually weakens powers of federal regulators contrary to FIRREA's intent); *Federal Deposit Insurance Corp. v. Burrell,* 779 F.Supp. 998, 1003 (S.D.Iowa 1991) (FIRREA enacted to put federal deposit insurance funds on firm footing and to strengthen civil sanctions for damaging the fund). If § 1821(k) is interpreted as establishing a uniform standard of gross negligence, the ability of federal regulators to bring actions in states, such as Connecticut, against officers or directors of depository institutions for simple negligence or breach of fiduciary duty, would be eliminated. Instead of strengthening, such an interpretation would actually weaken the power of federal regulators.

Additionally, defendants' interpretation of 1821(k) would lead to an absurd result. Before the failure of a bank and the involvement of federal regulators, liability would attach for simple negligence, or for breach of fiduciary duty, in accord with state law. After failure, however, § 1821(k) would preclude liability for simple negligence, or for breach of fiduciary duty, and would limit any cause of action to gross negligence. Such an interpretation of § 1821(k) could indirectly encourage officials to hasten the demise of a troubled bank. *Canfield,* 967 F.2d at 449. Such a result would be contrary to the stated intent of Congress "to curtail ... activities of savings and loan associations that pose unacceptable risks to the federal deposit insurance funds." *Id.*

Finally, the weight of the legislative history of the statute supports the interpretation that § 1821(k) only preempts state law to the extent state law insulates directors and officers from liability. *See McSweeney,* 976 F.2d at 539 (evident from the articulated purpose of FIRREA and language of § 1821(k) that Congress did not intend to preclude actions based upon simple negligence); *Canfield,* 967 F.2d at 448, n. 6 (legislative history is consistent with holding that state law applies); *Resolution Trust Company v. Fiala,* 870 F.Supp. 962, 967–968 (E.D.Mo.1994) (legislative history supports interpretation that § 1821(k) only preempts

state law to extent state law insulates officers and directors from liability); *Resolution Trust Corp. v. Rahn,* 854 F.Supp. 480, 486 (W.D.Mich.1994) (court unpersuaded that evidence indicates Congress intended § 1821(k) to preempt state law); *Federal Deposit Ins. Corp. v. Gonzalez–Gorrondona,* 833 F.Supp. 1545, 1549–1550 (S.D.Fla.1993) (House Report is not the definitive statement of Congress' intent as to meaning of § 1821(k)). *But see Resolution Trust Corp. v. Gallagher,* 10 F.3d 416, 421–424 (7th Cir.1993) (legislative history of § 1821(k) indicates Congressional intent to preempt federal common law); *Resolution Trust Corp. v. Camhi,* 861 F.Supp. 1121, 1130–1131 (D.Conn.1994) (legislative history of § 1821(k) supports finding that provision preempts state law); *Resolution Trust Corp. v. O'Bear, Overholser, Smith & Huffer,* 840 F.Supp. 1270, 1276 (N.D.Ind.1993) (same).

The Senate Report, in regards to § 1821(k), provides that the statutory subsection:

> ... enables FDIC to pursue claims against directors or officers of insured financial institutions for gross negligence (or negligent conduct that demonstrates a greater disregard of a duty of care than gross negligence) or for intentional tortious conduct. This right supersedes State law limitations that, if applicable would bar or impede such claims. This subsection does not prevent FDIC from pursuing claims under State law or under other applicable Federal law, if such law permits the officers or directors of a financial institution to be sued (1) for violating a lower standard of care, such as simple negligence, or (2) on an alternative theory such as breach of contract or breach of fiduciary duty.

*Fiala,* 870 F.Supp. at 968 (citing 135 Cong. Rec. § 6912 (daily ed. June 19, 1989)).[8]

**8.** Defendants' contention that the House Conference Report contradicts the Senate Report is unpersuasive. The House Report only addressed § 1821(k)'s preemption of state law which insulated officers and directors from liability. The House Report did not address the savings clause of § 1821(k) which preserves the FDIC's ability to pursue claims for simple negligence or breach of fiduciary duty in states in which such claims are cognizable. *See Resolution Trust Corporation*

### 3. An Interpretation of § 1821(k) Must Be Consistent With Other Provisions of FIRREA

■ When analyzing the meaning of 12 U.S.C. § 1821(k), the Court must construe § 1821(k) with other provisions of FIRREA. Pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC succeeds by operation of law to:

> all rights, titles, powers, and privileges of the insured depository institution, and any of the stockholder, member, account holder, depositor, officer or director of such institution with respect to the institution and the assets of the institution.

Thus, 12 U.S.C. § 1821(d)(2) enables the FDIC to stand in the shoes of the failed bank or its stockholders and to sue the bank's officers and directors for mismanagement under state law. *See Resolution Trust Corp. v. Gregor,* 872 F.Supp. 1140, 1147 (E.D.N.Y. 1994) (RTC succeeds to all rights of the institution); *Federal Sav. and Loan Ins. Corp. v. Shelton,* 789 F.Supp. 1360, 1364 (M.D.La.1992) (12 U.S.C. § 1821(d)(2)(A)(i) legally subrogates FDIC to claims of shareholders against officers and directors); *Federal Deposit Insurance Corp. v. Black,* 777 F.Supp. 919, 921 (W.D.Okl.1991) (since stockholders may prosecute claims against bank directors and officers based upon less than gross negligence, Congress obviously intended FIRREA to provide the FDIC with access to state law).

If under state law a stockholder or depositor could have brought a simple negligence claim against a director, presumably the FDIC would inherit those rights. *Resolution Trust Corp. v. Gregor,* 872 F.Supp. 1140, 1147 (E.D.N.Y.1994). However, if defendants' interpretation of § 1821(k) is correct, once the FDIC takes over, claims of shareholders and depositors against officers and directors under state law would be barred.

*v. Fiala,* 870 F.Supp. 962, 968 (E.D.Mo.1994). At a minimum, the legislative history is ambiguous. When the legislative history of a statute is not clear, the plain language of the text controls. *See Federal Sav. and Loan Ins. Corp. v. Shelton,* 789 F.Supp. 1360, 1364 (M.D.La.1992) (Because language of § 1821(k) is clear, there is no need to review legislative history to determine its meaning).

Instead of succeeding to "all rights," the FDIC would instead succeed to only "some rights." Such an interpretation of § 1821(k) is inconsistent with the language employed by § 1821(d)(2)(A)(i) and results in a judicial revision of both § 1821(k) and § 1821(d)(2). *See Shelton,* 789 F.Supp. at 1365.

### B. The Application of State Law to a Federally Chartered Bank

Defendants next contend that even if state law applies to the directors and officers of financial institutions in general, state law should not apply here, where CNB is a federally chartered bank. Defendants argue that the National Banking Act, 12 U.S.C. § 21, *et seq.,* which sets forth the powers of federally chartered banks, implicitly preempts state law and provides for the federal regulation of federally chartered financial institutions. Defendants' contention is not without precedent. Indeed, several courts have held that federally chartered financial institutions are "creatures of federal law," subject only to federal law for the purpose of imposing liability upon officers and directors.[9] However, other courts have recognized that such a conclusion has no foundation.[10] This Court finds the latter reasoning more persuasive.

### 1. The National Banking Act Does Not Implicitly Preempt State Law

The defendants assert that only federal law should apply to federally chartered financial institutions because "[t]he scheme of federal regulation of their internal affairs is so elaborate and comprehensive that federally-chartered banks are considered creature[s] of federal law from cradle to corporate grave." *See* Saglio Memorandum In Support of Motion for Judgment on Pleadings, pg. 5 (# 106). The defendants essentially argue that such pervasive federal regulation implicitly preempts state law.

It is true that "[a]bsent explicit pre-emptive language, Congress' intent to supersede state law in a given area may nonetheless be implicit if federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it.'" *Federal Deposit Insurance Corp. v. Canfield,* 967 F.2d 443, 448 (10th Cir.), *cert. dismissed,* —— U.S. ——, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992) (quoting *Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 605, 111 S.Ct. 2476, 2481–82, 115 L.Ed.2d 532 (1991)).

However, the mere fact that a financial institution is federally chartered does not immunize that institution from state law. Indeed, in the past, Connecticut law has readily been applied to federally chartered financial institutions. Recently, in *Normand Josef Enterprises Inc. v. Connecticut National Bank,* 230 Conn. 486, 646 A.2d 1289 (1994), the Connecticut Supreme Court commented that "[w]hile banks are arguably comprehensibly regulated under federal law, even national banks, which are instrumentalities of the federal government, have always been subject to the laws of the state in which

---

9. *Resolution Trust Corp. v. Chapman,* 29 F.3d 1120, 1122 (7th Cir.1994) (federal law alone governs internal affairs of federally chartered financial institution); *Resolution Trust Corp. v. Camhi,* 861 F.Supp. 1121, 1126 (D.Conn.1994) (Charter Federal was a creature of federal law from its cradle to its corporate grave); *Resolution Trust Corp. v. Hess,* 820 F.Supp. 1359, 1362 (D.Utah 1993) (comprehensive federal regulation of federally chartered financial institutions leaves little or no room for state law). *See, generally,* Ronald W. Stevens and Bruce H. Nielson, The Standard of Care for Directors and Officers of Federally Chartered Depository Institutions, 13 Ann.Rev.Banking L. 169, 232 n. 19 (1994).

10. *Resolution Trust Corp. v. Everhart,* 37 F.3d 151, 153 (4th Cir.1994) ("internal affairs doctrine" not persuasive); *Resolution Trust Corp. v. Gregor,* 872 F.Supp. 1140, 1150–51 (E.D.N.Y.

1994) (rejecting automatic reference to "internal affairs doctrine"); *Resolution Trust Corporation v. Fiala,* 870 F.Supp. 962, 969 (E.D.Mo.1994) (rejecting distinction between a state and federally chartered financial institution as "non-sensical"); *Resolution Trust Corp. v. Rahn,* 854 F.Supp. 480, 486 (W.D.Mich.1994) (officers and directors of a federally chartered financial institution are subject to state law); *FDIC v. Stahl,* 840 F.Supp. 124, 128 (S.D.Fla.1993) (applying state law to a federally chartered institution); *RTC v. Heiserman,* 839 F.Supp. 1457, 1462 (D.Colo.1993) (Colorado state law of simple negligence and breach of fiduciary duty applicable to a federally chartered savings and loan association); *Resolution Trust Corp. v. Gibson,* 829 F.Supp. 1103, 1009 n. 2. (W.D.Mo.1993) (there is nothing to suggest that officers and directors of federally charted institutions are only subject to federal causes of action).

they do business." *Id.* at 517, 646 A.2d 1289. State law is superseded only where: (1) Congress clearly has manifested an intent to exclusively occupy a field; (2) compliance with both federal and state regulations is a physical impossibility; or where (3) state law stands as an obstacle to the accomplishment and execution of the full purposes of Congress. *Shea v. First Federal Savings and Loan Assoc. of New Haven,* 184 Conn. 285, 292, 439 A.2d 997 (1981) (citations omitted). *See Normand Josef Enterprises Inc.,* 230 Conn. at 517, 646 A.2d 1289 ("State laws are preempted only when their operation expressly conflicts with the laws of the United States").

As discussed *infra,* the savings clause of 12 U.S.C. § 1821(k) expressly preserves the application of "other applicable law" to officers and directors of financial institutions. By inserting this savings clause, Congress explicitly indicated that federal, as well as state law, was to apply to the liability of officers and directors of federally chartered financial institutions. In light of the savings clause, the assertion that state law is implicitly preempted by an elaborate scheme of federal regulation is not persuasive.

Further, as discussed *infra,* one of the express purposes of FIRREA was to strengthen the ability of federal regulators to bring civil actions against those responsible for the demise of federally insured financial institutions. Connecticut law, which recognizes claims against officers and directors for simple negligence and for breach of fiduciary duty, enhances the ability of federal regulators to carry out this objective. Compliance with both state and federal law is not impossible. The application of Connecticut law to a federally chartered financial institution does not create an obstacle to the accomplishment and execution of the full purposes of Congress. Rather, the application of state law enhances Congress' intent to strengthen the powers of federal regulators.

Finally, the Court notes that at the time of the enactment of FIRREA, over half of all savings and loan associations held federal charters. *Resolution Trust Corp. v. Chapman,* 29 F.3d 1120, 1126 (7th Cir.1994) (Posner, J., dissenting). If Congress intended for officers and directors of state and federally chartered financial institutions to be subject to different standards of liability, Congress would have so indicated. Yet, neither the text of § 1821(k), nor its legislative history, distinguishes between state and federally chartered institutions. *See Resolution Trust Corp. v. Fiala,* 870 F.Supp. 962, 969 (E.D.Mo.1994) (§ 1821(k) draws no distinction between state and federally chartered institutions); *Resolution Trust Corp. v. Gibson,* 829 F.Supp. 1103, 1109 n. 2 (W.D.Mo. 1993) (nothing indicates that federally chartered institutions are only subject to federal causes of action). "There is no evidence that Congress believed it was creating a new immunity for directors of federal S & L's by depriving the RTC of the benefit of state laws that imposed higher duties on directors." *Chapman,* 29 F.3d at 1126 (Posner, J., dissenting).

For all of these reasons, this Court finds unpersuasive the defendants apparent assertion that the pervasive federal regulation of federally chartered financial institutions implicitly preempts state law.

### 2. The Internal Affairs Doctrine is Not Applicable

Even if state law is not preempted, defendants argue that federal law should still apply to a federally chartered financial institution based upon choice of law principles invoked by the "internal affairs doctrine."

The internal affairs doctrine provides that the law of a corporation's forum state applies to internal disputes, including claims against officers and directors. The doctrine recognizes the benefits of using one rule of law to determine the duties and liabilities of directors and officers whose firm may do business in many states. Otherwise a corporation could be faced with conflicting demands. *See Resolution Trust Corp. v. Chapman,* 29 F.3d 1120, 1122 (7th Cir.1994) (discussing the doctrine); *Resolution Trust Corp. v. Camhi,* 861 F.Supp. 1121, 1126 (D.Conn.1994) (same). *See also* Restatement (2d) of Conflict of Laws § 302 (1971).

Defendants assert that since CNB is a federally chartered financial institution, the internal affairs doctrine mandates the appli-

cation of only federal law to determine the liability of CNB's officers and directors. Again, defendants' argument is not without precedent. Both the Seventh Circuit and the Honorable T.F. Gilroy Daly, of the United States District Court for the District of Connecticut, have rejected the application of state law to a federally chartered financial institution based on this doctrine.[11] Other courts have rejected this theory.[12] This Court finds that the internal affairs doctrine is inapplicable.

As a preliminary matter, this Court hesitates to apply the internal affairs doctrine. Here, the FDIC has brought claims against officers and directors of CNB for negligence, gross negligence and breach of fiduciary duty. The FDIC alleges that as a result of the defendants' actions, CNB became insolvent. The internal affairs doctrine has traditionally applied to internal corporate disputes involving claims against officers and directors. The aggrieved party in such a dispute is usually a shareholder of the corporation. Here, however, the aggrieved party is the taxpayer, not a sole shareholder. After all, it is the taxpayer who is forced to insure deposits ravaged by mismanagement. The application of the internal affairs doctrine to the facts of this case would deprive the FDIC, and ultimately the taxpayer, of remedies available under state law. This Court hesitates to deprive the government of a statutory remedy. *See Federal Deposit Insurance Corp. v. McSweeney*, 976 F.2d 532, 538 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993) ("Judicially construing an implied loss of existing remedies is particularly inappropriate when applied to the rights of the government").

Further, the purpose of the internal affairs doctrine is to establish one rule of law to determine the duties and liabilities of corporate directors and officers who do business in many states. However, here, CNB's only offices were based in Connecticut. Under these facts, the rationale that justifies the application of the doctrine is non-existent.

▉ Finally, "[i]n cases of directors' liability, automatic reference to the law of the state of incorporation is rejected." *Resolution Trust Corp. v. Chapman*, 29 F.3d 1120, 1126 (7th Cir.1994) (Posner, J., dissenting) (citing *Norlin Corp. v. Rooney, Pace, Inc.*, 744 F.2d 255, 263–64 (2nd Cir.1984)). The internal affairs doctrine only creates a presumption that the law of the state of incorporation should apply. *Id. See* Restatement (Second) of Conflict of Laws, § 309 and comment c (1971). This presumption can be rebutted after consideration of the following relevant factors: (1) the needs of the international system, (2) the relevant policies of the forum, (3) the protection of justified expectations, (4) the basic policies underlying the particular field of law, (5) certainty, uniformity and predictability of result, and (6) ease in determination and application of the law to be applied. Restatement (Second) of Conflict of Laws §§ 6, 309 (1971). *Chapman*, 29 F.3d at 1126–27 (Posner, J., dissenting); *Resolution Trust Corp. v. Gregor*, 872 F.Supp. 1140, 1150–51 (E.D.N.Y.1994). Application of these factors to the facts reveals the following:

First, the needs of the international system are discussed *infra*. Congress enacted FIRREA and § 1821(k) to strengthen the powers of federal regulators to protect the federally insured deposit fund. An application of choice of law principles which limits the recourse of federal regulators interferes with the purpose of the statute. Second, the relevant policy forum here is the state of Connecticut. Connecticut law is clear. Officers and directors of financial institutions are liable for simple negligence and for breach of fiduciary duty. *See infra* n. 1. A holding that applies only federal law to federally chartered financial institutions located in Connecticut would interfere with the policy

---

11. *Resolution Trust Corp. v. Chapman*, 29 F.3d 1120, 1122 (7th Cir.1994); *Resolution Trust Corp. v. Gravee, et al.*, 1995 WL 75373 * 3 (N.D.Ill. Feb. 22, 1995); *Resolution Trust Corp. v. Camhi*, 861 F.Supp. 1121, 1126 (D.Conn.1994).

12. *Resolution Trust Corp. v. Everhart*, 37 F.3d 151, 153 (4th Cir.1994); *Resolution Trust Corp. v. Gregor*, 872 F.Supp. 1140, 1150–51 (E.D.N.Y. 1994). *See Resolution Trust Corp. v. Chapman*, 29 F.3d 1120, 1126 (7th Cir.1994) (Posner, J., dissenting).

 

of the forum state. Third, CNB conducted business solely in the state of Connecticut. This is not a case where officers and directors are subject to liability in multiple forums. As a bank that conducted business solely in Connecticut, the application of Connecticut law to CNB officers and directors would be a "justified expectation." Fourth, the basic policy underlying FIRREA is to strengthen the ability of federal regulators to protect the federal deposit insurance fund. The application of state law to officers and directors of federally chartered financial institutions enhances this underlying purpose. Fifth, application of Connecticut law to CNB officers and directors would promote certainty and uniformity. A contrary determination would create two different standards of liability for officers and directors of Connecticut financial institutions depending upon the nature of the institution's charter. Sixth, Connecticut law regarding officer and director liability is not in dispute and could be easily applied to officers and directors of federally chartered financial institutions.

For these reasons, the Court concludes that even if the internal affairs doctrine is presumed to apply, that presumption is rebuttable. Under the facts of this case, the internal affairs doctrine does not apply. Connecticut state law applies to officers and directors of CNB.

### C. *Principles of Federalism*

Defendants finally assert that principles of federalism require the preclusion of state law and the application of federal law to federally chartered financial institutions. However, both the United States and the Connecticut Supreme Courts have stated that national banks are subject to state law as long as state law does not infringe on national banking law or impose an undue burden on the performance of the bank's functions. *See Anderson National Bank v. Luckett,* 321 U.S. 233, 248, 64 S.Ct. 599, 607, 88 L.Ed. 692 (1944); *Normand Josef Enterprises Inc. v. Connecticut National Bank,* 230 Conn. 486, 517, 646 A.2d 1289 (1994). As discussed *infra,* Connecticut and federal law concerning the liability of officers and directors of federally chartered financial institutions is not in conflict. Therefore, principles of federalism are not violated by the application of Connecticut law.

### III. ORDER

The Court ORDERS that the following judgments shall enter:

(1) the Motions of Robert Saglio (# 105), George W. Hannon (# 107), Pamela S. Diamond (# 125), Frank S. Raffa (# 138), Robert B. Doyle and George E. Durstin (# 190), and Peter B. Deich, William A. Fochi, Barbara K. Bailey, Raymond S. Derr, and Robert F. Dickau, Sr. (# 195–1), for Partial Judgment on the Pleadings are all DENIED.

(2) The Motions of Paul E. DiSanto (# 114), Pamela S. Diamond (# 124), and Peter B. Deich, William A. Fochi, Barbara K. Bailey, Raymond S. Derr, and Robert F. Dickau, Sr. (# 195–2) to Dismiss Counts 1 and 4 of the plaintiff's Amended Complaint are all DENIED.

Any objections to this report and recommendation must be filed with the Clerk of Courts within ten (10) days of the receipt of this recommended ruling. Failure to object within ten (10) days will preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; *Small v. Secretary of HHS,* 892 F.2d 15, 16 (2nd Cir.1989).

Dated this 17th day of March, 1995.